*Jonathan Ferris* and *Elijah Ferris* vs. *Nathaniel Burton.*

That the Court will decree an offset of demands in reality mutual, though not
nominally so, where equity requires it.

But these demands must have been rendered certain and liquidated by judg-
ment, or decree of court, or by confession of defendant in his answer.

THE object of the original bill of complaint of the orator, *Jon-
athan Ferris,* was to enjoin certain suits pending, in favor of said
*Burton* against the said *Jonathan Ferris* ; and to compel an offset
of said demands, sued by said *Burton*, against certain demands
of these orators.    On a partial hearing upon a demurrer to the
original bill, and learning, incidentally, the grounds of defence

disclosed  in  the  answer  of  *Burton*
provisionally  interposed,  the  Court  in-
timated a difficulty in getting at the merits, without joining *Elijah*
*Ferris* as complainant; and also a difficulty in the defence
without a cross bill, bringing *Andrew Bostwick* before the court,
who seemed to have been the person, with whom *Burton*
dealt, and against whom alone he originally made his
charges ; and who might probably have an interest in presenting
claims against *Burton* to diminish his claims.   Upon these sug-
gestions, from the court, the cause was continued, without ob-
jection, with leave for the orator to amend, and with leave for
*Burton* to bring a cross bill, should he elect so to do, by times
specified in the entry of the continuance.   The bill was then a-
mended, joining *Elijah Ferris* as complainant, and *Burton* filed his
answer to the amended bill, and also filed a cross bill against said
*Jonathan* and *Elijah Ferris,* charging the substance of the facts
set forth in his answer to the amended bill, and praying for a dis-
covery with regard to those facts ; also praying that *Andrew Bost-*
wick might be made a party to both bills.   But *Burton* afterwards
abandoned the pursuit of *Bostwick,* as defendant in the cross bill,
and both parties used his testimony, taken in chief.   *Jonathan* and
*Elijah Ferris* severally answered the cross bill.   *Burton* also
demurred to the amended bill, and pleaded the statute of limita-
tations, and all the answers were traversed, and the testimony
taken and published by both parties, and the cause set down for a
hearing upon said bills and answers, and traverse of the same.—
Upon an inspection of the claims, on both sides, as presented in
said bills and answers, they appear as follows : The orators had
been partners together in trade and merchandize twenty-five
years or more, and, from 1807 to Sept. 1809, they were secretly
partners of *Andrew Bostwick,* who is mentioned above,  and who
was then trading in merchandize, in *Swanton,* apparently on his
own account.   In Sept. 1809, the orators and *Bostwick* dissolved
their partnership by mutual agreement ; the said *Bostwick* to pay
all the debts due from the firm, and have all the avails of their trade
as fully as if the orators had never been his partners.   But the or-
ators were holden for a large amount of said debts, which they in
the sequel, were obliged to pay, and did pay, on account of *Bost-*

*wick's* neglect. That on the thirtieth day of ⟨
January, 1810, the said *Nathaniel Burton* ⟨
purchased of said *Bostwick* all the goods then in his store at *Swan-*
*ton,* amounting to seven thousand dollars or more, and gave his
notes for the same : among which notes were four of one thou-
sand dollars each, made payable to said *Bostwick,* or order, at
different periods, but all in 18 months. That said *Bostwick* on
the same day assigned said four notes to the orators. They
forthwith gave notice to said *Burton* of this assignment, and re-
quested him to pay said notes to them, when the same should be-
come payable : which he promised he would do.

As soon as *Bostwick* had sold out his goods to *Burton,* he em-
barked in the lumber-trade, and, in carrying it on, called upon
*Burton* for goods from the same lot, at retail, and drew orders
upon him which were answered : and *Burton* paid particular debts
for *Bostwick* till his account was swollen to the amount of seven
or eight thousand dollars : all of which he charged to *Bostwick,*
considering him his sole debtor, and not suspecting the orators to
be partners with him. *Bostwick* soon sustained such heavy losses
in his lumber business, that he failed. Afterwards, *Burton* ob-
tained such information of the former partnership of the orators
and *Bostwick,* and supposing the same still to continue, that he
brought his action on book account against the orators and *Bost-*
*wick,* jointly, to recover his said debt charged against *Bostwick.*
His writ was served on said *Jonathan Ferris* only, a *non est re-*
*turn* being made as to *Bostwick* and *Elijah Ferris.* He so es-
tablished the partnership that he recovered judgment against said
*Jonathan Ferris* for above five thousand four hundred dollars.—
Some of his claims were rejected, as not being proper items of
book charge, and he brought an action of *assumpsit* for them a-
gainst the same three, and recovered against said *Jonathan* alone,
as before, about two hundred and eighty eight dollars. In the
mean time, the said *Jonathan* and *Elijah,* the orators, had brought
a suit upon the two of said notes first payable, as assignees of
said *Bostwick* ; and had recovered judgment against said *Burton*
for the same, amounting to about two thousand one hundred and
fifty dollars ; and had taken out execution, and caused said
*Burton* to be committed to prison on the same ; and he had pro-
HHH

Franklin, Jan, 1829.

Ferris et al. vs. Burton.

cured bonds to the sheriff for the liberties of the prison ; and had departed from said liberties, and forfeited his bond ; and the sheriff had deceased without assigning said bond to the orators : and no suit had ever been commenced on the same. Said *Burton*, at the commencement of the original bill,· had become poor, and had little or no property, except his said two judgments, and his other claims against said *Bostwick*. Said *Bostwick*, from the time of his failure in the lumber concern, had remained wholly destitute of property. There was on the hearing no great controversy about the truth of the facts thus far recited, so far as they relate to the merits of these suits. But other matters, to be named, were litigated in the allegations and proofs. Said *Burton* contended, that two of said four notes were only assigned to the orators, as collateral security for their signing a bank note, at the *Vermont State Bank at Burlington*, of ten or twelve hundred dollars.— The orators contended that all four of said notes were assigned to them as general security for their disbursements and indebtedness in said concern, which had wholly become the interest of *Bostwick*, and their said claims exceeded the amount of these four notes. That they, in fact, paid for nearly all of the goods sold by *Bostwick* to *Burton*, for which said four notes, and some others, were given by *Burton* to *Bostwick*. The said *Burton* also contended, that he and *Bostwick* paid the whole of said note due to said *Bank*. The orators contended that they paid one half of the same. *Burton*, also contended that the orators and *Bostwick* were in fact partners during the time that his said demands against *Bostwick* accrued. This was denied by the orators in their answers to the cross-bill. They insisted that all their connection with *Bostwick* was dissolved in September, 1809 ; and so *Bostwick* testified. *Burton* also claimed large sums as due to him, and not included in said two judgments he recovered of said *Jonathan*, due at least from *Bostwick* ; and due from him and the orators, if he succeeded in establishing their partnership, at and after January 30, 1810, when said claims accrued. The nature of these claims, and the testimony about the same, are sufficiently noticed in the report of the arguments of counsel, and the opinion of the court.

*Arguments in behalf of the Orators.*—— ⎰ Franklin, Jan. 1829.
⎱ *Ferris et al* vs. *Burton.*

I. The first question arising in this cause, is the validity of the demurrer. The *first* cause especially assigned is, that *Bostwick* is not a party to the bill. This is not necessary. This question is to be decided on the bill a lone, and without reference to the answer, cross bill, and proofs. On the face of the bill, *Bostwick* has no interest in the result : the application is simply to set off the judgment and notes in favor of the plaintiff against *Burton* to the judgments in favor of *Burton* against *J. Ferris.* No possible right of his, to be discovered on the face of the bill, can be impugned by the decree. At the same time perfect and effectual relief may be afforded without any decree to operate upon him. It is true that he may still be responsible to the defendant for the claims on which the judgments against *J. Ferris* are founded. But he is now only collaterally liable, and the mere fact that this liability may be extinguished by granting the prayer of the bill, does not render it necessary that he should be joined. He stands, in this respect, like any person, secondarily or collaterally liable ; and the mere fact that this liability may be extinguished by granting the prayer of the bill, does not render it necessary that he should be joined. He stands in this respect, like any person, secondarily or collaterally liable, and it can no more be necessary to join him, than it would be to join bail to the sheriff, or bail in court, in an application for an injunction, or to satisfy a judgment by set-off. The general rule as to parties is, that no person need be joined whose interest is not necessarily involved in the issue, and must necessarily be involved in the decree.—1 *Johns. Ch.* 349, *Wendell* vs. *Van Rensellaer.*

2. The *second* cause of demurrer is also insufficient. Supposing the plaintiffs to have an adequate remedy at law, it does not follow of course that they have none in chancery. The powers of the two courts are in many instances concurrent, and the party often has his election where to seek his remedy. Such indeed, is the case with the very power in question. Our courts have never exercised the power of setting off judgments in a summary way, except under our statute; and this case (the judgments not being technically mutual,) is obviously not within it. Besides,

two of the notes not being in judgment could not be set off, even if the judgments are within the statute. *Burton* suffered judgment, was committed, and escaped, long before prosecuting his claim against the plaintiffs: thus evading an offset in the usual mode of pleading it, and interposing technical difficulties in the way of an off-set of the judgments. Besides, the parties may be relieved, although they might have pleaded the set-off at law, and omitted it.—2 *Bl. R.* 369, *Barker* vs. *Braham.*

3. The *third* cause of demurrer is, this court cannot grant the relief prayed for. On this point we cite *Simpson* vs. *Ward*, 14 *Johns.* 63, *and authorities there cited.*—*Mont.* on Set-Off, p. 2–5.—5 *Vessy*, 108.—12 *do.* 848.—13 *do.* 183.

II. If the court have the general power, the question then is, can they make the set-off in this case if they deem it equitable? It may be objected that the debts are not mutual. But the set off in this case is sought, not under the statute, but from the common law power of the court. Under the statute the debts must be technically mutual. But in the exercise of the common-law power, such mutuality only is required, as renders the set-off equitable and proper. The debts in this case are sufficiently mutual. Equity will look rather to the origin and nature of these claims than to the particular form which they may have accidentally assumed. The two judgments against *J. Ferris* were recovered against him as partner with *E. Ferris* and *A. Bostwick.* If the parties are to be regarded as partners (and so far as the validity of the judgments is concerned, it is not now to be questioned,) their rights and liabilities are mutual. If partners at all, they were such when the goods were sold to *Burton*, and were equally interested in the price of them. Can they not therefore set-off this price against the charges for goods and advances to them afterwards? Further, *Elijah Ferris* is equally interested in the judgments against *J. Ferris.* He may be forced to contribute, if the judgments are paid, and *Bostwick* being insolvent. *J.* and *E. Ferris* may be regarded as virtually the debtors. As to the counter demands, they are not only really, but nominally, the debtors. But if we regard the form in which the debts are now presented, there is no difficulty in making the set-off. *J.* and *E. Ferris*, are

joint creditors of the defendant.   He is the ⎰ Franklin, Jan. 1829.
creditor of *J. Ferris*.   *E. Ferris* is the ⎱ *Ferris et al.* vs. *Burton*,
only person obviously, who can object to the set-off.   But he is
the applicant, and *Burton* cannot object.   If the case were revers-
ed, and *Burton* the applicant, the case might be different.   But ev-
en in such case, the set-off has often been decreed.—14 *Johns.*
63, *Simpson* vs. *Hart*.—2 *H. Bl.* 587, *Dennie* vs. *Elliot*.—4 *T.
R.*123.—*Mont. on Set-Off*, 7, *note*.—But further, Burton states in
his answer, that at the time of giving the notes, it was agreed that
his advances which he might make to Bostwick should be appli-
ed to the notes ; and he admits that his advances were the foun-
dation of the judgments against *J. Ferris*.   Upon the ground, there-
fore, of the original agreement a set-off may be made.

The plea of the statute of limitations is no bar to the set-off,
for, as to the notes, they are dated January 30th, 1810 :   the bill
was filed in 1819.   As to the judgment against Burton, the stat-
ute does not run while the claim is pursued through the process of
commitment, escape, &c.   At all events, the gaol bond is within
no statute of limitations, and the plaintiffs being equitably the ow-
ners of the bond, and entitled to the benefit of it, may set it off.
—1 *H. Bl. Rep.* 659, *O'Conner* vs. *Murphy*.

Is it equitable that the set off should be made ?   On this point
a stronger case can hardly be imagined.   It appears by the an-
swer to the cross bill,  and the proofs, that the plaintiffs originally
paid for the goods for which the notes were given to a very large
amount—that the notes have never been paid—that they were su-
ed by Burton for a part of the same goods which he delivered to
Bostwick, and judgments obtained to a large amount, and that
Bostwick and Burton are both insolvent.   Independently of the
injustice of suffering Burton to collect his judgments against *J.
Ferris*,while he is indebted to the plaintiffs in a larger amount for
which they have no effectual remedy,  the strange result will be
produced, that the plaintiffs, after paying twice for the goods, will
lose them entirely, and this after paying Burton for the very goods
for which they hold his notes unpaid.

If the offset is made, how far shall it be made, and what claims
must be taken into the account ?   Answer, the notes not in judg-
ment which are admitted to be due, and the judgments against

Burton founded on the two notes first due.    As to the latter, an attempt is made to set up a supposed receipt executed by the plaintiffs to Burton ; but this is no defence to the set off; for the receipt is not proved.    It is to be sure sworn to by the defendant. But the existence of it is denied by both the plaintiffs, in their answer to the cross bill, and is disproved by Bostwick. The receipt, if to be considered as proved, furnishes no defence.    It is evidence of a mere agreement with Bostwick, with which the defendant has no concern.

The great difficulty with this subject is, that *Bostwick* did not pay the bank debt and redeem the pledge.    The defendant has failed to establish this fact.    The defendant's two judgments against *J. Ferris* are proper to be set off.    But no other claims of his are.    His private claims against *Bostwick* are not proper to be set off.—8 *T. R.* 69, *Glaister* vs. *Hewer*. To set off these would be in direct violation of *Burton's* agreement with the plaintiffs. He not only trusted *Bostwick* upon his private responsibility, but gave the plaintiffs distinctly to understand that he did so.    As to charging the plaintiffs as dormant partners with *Bostwick*, the attempt fails.    The fact of partnership is denied by the answer to the cross bill, and disproved by *Bostwick* in his answer.   No evidence is offered to prove a partnership in fact after the 30th January, 1810 ; nor that the defendants had dealings with the partnership whilst it existed.    In his after deal he relied on the sole responsibility of *Bostwick*.    The fact of their having been partners will not avail, for a dormant partner is not liable after a dissolution, even without notice to such as had no previous dealings with the firm.    Nor is publication in the *Gazette* necessary to protect such dormant partner.—2 *Camp.* 617, *Newsome* vs. *Coles*—*Esp. N. P. C.* 371, *Godfrey* vs. *Turnbull.—Peake's Cases*, 42, 154.—2 *Brod. & Bing.* 72, *Brooke* vs. *Enderby.—4 Esp. R.* 59, *Evans* vs. *Drummond*. But supposing the plaintiffs liable as partners, there is nothing set forth in the bill which will serve as the subject of a set-off. With the exception of the claim formerly adjudicated upon, nothing appears in any tangible shape—nothing which the court can act upon.    There is a general indefinite charge that the plaintiffs are indebted.    Claims thus presented, having laid dormant for

many years—so long, indeed, as to be ⎧ Franklin, Jan. 1829.
barred by the statute of limitations, be- ⎨ *Ferris et al. vs. Burton.*
tween a creditor confessedly poor, and debtors who were amply
responsible, ought not to be favoured.   They should be present-
ed in such a shape, at least, as that this court can determine
their validity.   But with respect to such as are specified, they
are barred by the judgments set forth in the bill.   The judgment
on *book* concludes the defendant as to all articles charged or
chargable on book.   And the judgment in *assumpsit,* as to ev-
ery thing adjudicated upon, of which the specification is evidence
The defendant has not set forth in any part of his proceedings,any
specific claim or debt due him, which does not also appear to have
been submitted in the trials at law.

*Argument in behalf of Burton.   Firstly.* On the part of *Bur-
ton* it is contended that the offset claimed by the orators in this
case cannot be decreed upon any princples established in this court.
Here are neither mutual debts nor mutual credits, and without a
mutual demand, or a mutual credit, the Court of Chancery will
not interfere.   A joint debt, and a seperate debt, cannot be set
off against each other at law.—*Mont. Set.* 25.—2 *Mad. Ch.*
513-4.—8 *Com. Dig.* 928-9.   Nor in equity,unless a clear mu-
tual credit has been given.—2 *Sw. Dig.* 149.

*Secondly.* It is further contended that if this offset can be
allowed, there is an adequate remedy at law.   The power to
make offsets rests either on the statute of offsets, or upon the
jurisdiction of courts over their suitors.—4 *T. R.* 123, *Mitchell
vs. Oldfield.*—2 *H. Bl. Dennie vs. Elliot.* But courts of law
exercise the power of setting oft judgments upon the latter princi-
ple as extensively as courts of equity, and under the statute, it is
said that "courts of equity have not gone farther than courts of
law in cases of set off."—2 *Aik.* 235.—*Mont. Set.* 57, 69.

*Thirdly.* If, however, the offset is allowable, we contend that,
upon the bills, answers and proofs, *Burton* is entitled to bring in
his other claims, not included in his two judgments.   1. The sum
of four hnndred and ninety six dollars, being the amount of goods
delivered by *Catlin* and *Jasper* to *Bostwick* immediately previous
to the sale of the store of goods by *Bostwick* to *Burton.* The
facts in relation to this appear from the testimony of *J. H. Bur-*

Franklin, Jan. 1829. } *ton* and *Seth Wetmore.—Peak N. P.*
*Ferris et al.* vs. *Burton.* } 197, *Puller et al.* vs. *Roe et al.*

As to the other demands which *Burton* claims to have set off, if any set off is ordered—we contend that the recovery by *Burton* in his two actions wherein he expressly charged the partnership of *Bostwick*, and *Jonathan* and *Elijah Ferris*, during the period in which these claims originated, and in the business to which they related, has, as against *Jonathan Ferris*, at least, conclusively established the fact of such partnership, during that period, and in that business carried on ostensibly by *Bostwick* alone, and under the name and style of *Andrew Bostwick.* This being the case' it is competent for any person dealing with *Bostwick* in that business to set off any debts of *Bostwick* against the partners.—7 *T. R.* 361, *notes, Strong et al.* vs. *Davy.—Mont. Set.* 29. We also contend that all these claims, (except the items in *Burton's* account disallowed by the auditor, as being for the separate and private use of *Bostwick*) were equally partnership debts as those for which *Burton* recovered: they are clearly blended in the general account, and dealings of the parties, and cannot be severed without manifest injustice. We further contend that *Burton's* notes, tho' made payable to *Andrew Bostwick*, might have been prosecuted in the names of all the parties, alledging that they were taken in the name and style of their firm; and that *J. & E. Ferris*, as indorsees, might have declared upon the endorsement of all the parties in the same way. Now it shall not be permitted to these persons by electing to call the notes the private property of *Bostwick*, or by any other arrangement among themselves, to vary the legal effect of the transactions to the injury of Burton. Considering, therefore, that the partners were in reality both payees and indorsees of the four notes, and that the indorsors and indorsees are in fact the same persons, it follows that all these partnership debts are proper subjects of offset against the notes.—5 *Ves. jr.* 108, *James* vs. *Kynnien.—Mont. Set.* 3.—*Do.* 69 *App.* 5.

The other claims, amounting to $1677, we consider to be proved by the testimony adduced by Burton, and ought to be set-off, against the orators' claims, if any offset be allowed. There is no evidence that these claims have been adjudicated in the action of

assumpsit *Burton* vs. *Bostwick*, and *Jon-* } Franklin, Jan. 1829.
-*athan* and *Elijah Ferris*.    The answer } *Ferris et al.* vs. *Burton.*
of *Bostwick* on this point is not evidence, and the deposition of
Wm. Brayton only shows his belief that most of them were con-
tained in the specification filed in that cause.    He does not say
that any evidence was offered to support them, or even that the
specification first filed was not altered or withdrawn before trial.
Being counsel in that cause, he could certainly have told if these
demands were really tried and adjudicated.

*Fourthly.* We contend that there is no equity in this case to induce
the court to allow the offset claimed by the orators beyond the amount
of two of the four notes, unless *Burton* is allowed, at the same
time, to bring into the account all his demands for which he has not
recovered judgment; because, upon the evidence it is doubtful
whether the orators did in fact purchase more than two of the
notes. We contend that two notes were pledged merely as an in-
demnity against a certain bank note, and that *Bostwick* paid the
principal part of that note.    And because, if the court should
grant the offset claimed by the orators, and not allow *Burton* to
bring in his other demands, he must lose as much in those de-
mands as the orators can possibly lose by failing to get an offset of
more than two of the notes.    It is not, therefore a case for equi-
ty to interfere, and the rule of law should be suffered to prevail.

HUTCHINSON, Chancellor, after stating the case, announced
the opinion of the court.    It is objected that the orators can have
no decree by reason of the deficiency of their bill; *Andrew
Bostwick*, not being made a party defendant.    We discover no
necessity or use in making him such party.    The orators com-
plain of nothing which would entitle them to a decree against him,
if he were defendant.    *Bostwick*, can exercise no control over
the demands on either side.    He, being not served with process
in *Burton's* suits at law, and, consequently not being a debtor in
said judgments, need not join to help the orators get rid of those
judgments in the particular way they choose to pursue.    If *Burton*
were sure he could establish the partnership between the orators
and *Bostwick*, which he has set up in his cross bill, he might want to
bring in *Bostwick* with the orators as defendants to that bill, for
the purpose of a decree that would cover all his claims that stand

III

Franklin, Jan. 1829.  ⎫  against *Bostwick*, and attach those claims
*Ferris et al.* vs. *Burton.* ⎬  to the others now litigated.    But the de-
fendant has not seen fit to pursue his motion to have *Bostwick*
notified and made a defendant to his cross bill : and he has no
right to complain that the orators have not joined him in theirs.
If *Bostwick* had a joint interest with the orators in the notes they
pray to have offset, there would be some ground for the objection.
But, it appears by the bill of complaint, and, indeed, by the testi-
mony in the case, that he has no interest whatever in those notes.
The orators, as assignees of *Bostwick*, have kept them till they
have made them their own : and they, standing as joint endorsees
of *Bostwick*, jointly retain the whole interest.    If they hold the
joint legal interest, they as fully, from the facts now before the
court, hold the equitable interest, as well with regard to *Bostwick*,
as to *Burton*.    Again, it is urged that, if the orators have any rem-
edy at all, they have ample remedy at law.    If this be so, it is
not by virtue of our statute, authorizing an offset of judgments.
A part of the orators' demands are not judgments.    The judg-
ments, also, must be before the same court, to come within the
statute.    If, by the remedy at law, is intended an application to
the discretionary power of the courts of law to compel offsets,
where equity requires it, the remedy is inadequate for the same
reason ; the demands are not all rendered incontestibly certain
by judgments.    Courts at law must act upon the rights of parties,
first, by pursuing the ways the law directs to decide what those
rights are ; then, give proper effect to the rights thus ascertained.
Let the claim of the orators be presented to a court of law, and
the defendant would have a right to plead *non assumpsit* to these
notes, and have a jury trial : and while this should progress, might
press the collection of his judgments and wholly evade the offset.
The discretionary power of this court, as a court of law, to com-
pel offsets on motion, only reaches the demands that have passed
into judgments ; which is not the case before us, but in part.—
See 2 *Aik. R.* 221, *Connable* vs. *Bucklin.*—It is further urged
that this court, as a Court of Chancery, have not power to com-
pel this set offset.    The objections, taken together, seem to im-
ply that we have greater power as a court of law than as a court
of chancery.    We might truly, meet the same embarrassments, at

the threshold, in each capacity; but, sit- <span>Franklin, Jan. 1829.</span>
ting as a court of chancery, we can so <span>*Ferris et al.* vs. *Burton.*</span>
control them as to prevent injustice.    We can lay an injunction
upon the judgments of the defendants, while the suit is pending,
as was done in this case.    If the defendant, in his answer, had de-
nied giving the notes of the orators, we might have directed an is-
sue to the jury, who would settle that question.    But the answer
of *Burton*, acknowledging the giving of the notes, has removed
that difficulty, and placed the cause on the same ground as if judg-
ment were rendered for the amount.    It is unnecessary, per-
haps, to observe, that chancery power was necessary to compel
this answer, which thus removes the objection to our exercising
the consummating power of this court, should equity require it.
Again, the statute of limitations, both pleaded and insisted upon
in the answer, is urged in bar of the orators' claim of offset.    We
may dispose of this by simply observing, that the answer expressly
admits that these notes were given, and have never been paid!
But, further, the notes were witnessed, and would run fourteen
years, which term had not elapsed when this suit was brought.
The statute would run against the judgment upon the two first
notes in eight years; but the same was merged in the bond for
the liberties of the prison, which comes not within the statute.
But the answer admits that all remains unpaid, which sweeps a-
way this ground of defence.    Indeed, it seems not to have been
much relied upon by the counsel.

The defendant charges, in his cross bill, that the orators and
*Bostwick* were partners in the lumbering concern, and as such,
holden to him for all his claims against *Bostwick*, that grew out o
that concern.    This is absolutely denied by both the orators in
their answers; and there is no testimony tending to prove it, as
relates to the demands not included in the judgments already re-
covered.    It is urged, however, that the decision in these actions,
that the partnership existed, is proof between these parties, dur-
ing that period, in relation to other demands.    This position can-
not well be maintained.    They might be partners with regard to
some transactions, and not so with regard to others.    Whether that
decision was right or not, it binds all parties with regard to the mat-
ters therein adjudicated; but it goes no further.    It does not bind

*Franklin, Jan. 1829.*
*Ferris et al vs. Burton.*

this court against doing what equity requires in relation to other matters, not then under consideration. In seems probable that those decisions are a hardship upon the orators. They, in denying the direct charge of partnership, admit that they were partners of *Bostwick* in his mercantile concerns about two years, ending in Sept. 1809 ; but answer that the connexion was then wholly dissolved. And they positively deny any connexion with him in the lumber concern.—— *Bostwick,* who stands an indifferent witness in this controversy, entirely supports the answers of the orators upon these points : and there is no testimony tending to contradict those answers. There may have been testimony on those trials, showing a partnership prior to Sept. 1809, and the said *Jonathan* might have been unable to prove the dissolution, or to prove it sufficiently published in the view of the court and jury ; but the testimony now before us can leave do doubt of the dissolution prior to the lumber concern.

The orators now claim that their notes, and demand due on the jail-bond, shall offset against the two judgments the defendant holds against *Jonathan Ferris,* on the ground of a mutuality of interest, and the probable loss of their said debts without such offset, by reason of the poverty of the defendant. This mutuality results from the partnership of the orators, of which we entertain no doubt. They being joint partners in all their advances to *Bostwick,* and in all their liabilities as his partners, while they continued so; also as his sureties, and in all the payments they made in consequence of such liabilities; and the four notes being aasigned to them jointly by *Bostwick,* they are jointly entitled, both in law and equity, to receive the pay on these demands, so far as either has any interest in them. Their interest in two notes is undisputed. With regard to the other two, it is disputed.

The defendant insists, in his answer, and in his cross bill, that two of these notes were only delivered to the orators as security for signing the bank note ; and he further insists, that the bank note was wholly paid by *Bostwick,* except forty dollars paid by the defendant himself. And he attaches to his answer what he says he verily believes to be a copy of a writing to that effect, given back by the orators, when they received said notes. He also urges the after concessions of the orators to him that the facts

were so.  This writing, if there was
such a one, is not produced in evi-
dence, and the orators in their answer to the cross bill, deny its
ever existing : and deny that two of said notes were delivered
merely as security for their signing the bank note ; but allege, that all
four of said notes were delivered for them to receive the pay, and
apply the same in satisfaction of their general expenditures in be-
half of *Bostwick*.  They further answer, that they paid towards said
bank note, or rather on the execution for the same debt, four hun-
dred dollars at one time, and three hundred at another time, and
the officer's fees, amounting to eleven dollars and seventy five
cents, which said sums have never been paid them, as they fully believe.
On the part of the defendant, *Esq. Wetmore* testifies, that
he was sheriff, and had the execution to collect, and that *Burton*
paid him forty dollars, and *Bostwick* paid the remainder.  On
the part of the plaintiffs, *Bostwick* testifies explicitly that he did
not pay the whole, but that the orators paid half, of said execu-
tion.

That the orators received two of those notes as security for
signing the bank note, merely, and that the bank note was paid by
*Bostwick* without charge to the orators, form a substantial charge
in the cross bill.  This makes the orators witnesses for the de-
fendant on that point.  And, as they in their answers deny
this, as before mentioned, and as *Bostwick's* testimony fully sup-
ports these answers, we must take the fact to be so, notwithstand-
ing the positive testimony of *Esq. Wetmore*.  Not that we doubt
at all the integrity and recollection of *Esq. Wetmore*.  The money
actually paid by the orators, might have been delivered by *Bostwick*,
and he might have felt no interest to inform *Esq. Wetmore* from
whom the money came.  What is still more probable, the money
paid by the orators might have been endorsed, and the officer's
fees paid, as related in the answers of the orators, and a delay a-
greed upon : and, afterwards, an *alias* or *pluries* execution taken
out for the remainder, and the whole paid to *Esq. Wetmore*, as
he now relates.  As we find this fact to be, if the lien of the orators
upon the two notes, first payable, were as charged by the defend-
ant in his cross bill, still, that lien was not destroyed by the re-
demption of the pledge, as contended by the defendant.  The

pledge continues, unless we believe the charge of the defendant in his cross bill, that the orators, in the fall of 1810, acknowledged the bank note paid without charge to them, and their lien upon the two notes destroyed. We are not at liberty to treat this as true; for it is denied by the answers, and there no testimony tending to prove it.

This result renders unimportant the controversy about the receipt, or the terms of it; the receipt, set up by the defendant in his answer to the orators' bill, and in his cross bill. This the defendant attempts to support by the testimony of *John H. Burton.* His testimony, upon this point, is far from being positive. He has no transcript of the writing, and his recollection is so imperfect that he cautiously inserts at every sentence, " if he recollects right," &c. Besides, his testimony leaves the receipt in the hands of *Bostwick,* to whom it belonged, and he, instead of showing it lost, so it cannot now be produced in court, swears that he believes no such writing ever existed. We should require but little testimony to convice us that *Bostwick* took a writing of some kind, from the orators, when he assigned to them notes to the amount of four thousand dollars : especially if, as the orators affirm, the application of the avails, or amount, was to be the subject of a future settlement. But, when we are called upon to decide upon the exact terms of that writing, without having it, or any sworn transcript, before us, we should act upon something more definite and positive, than the testimony of *J. H. Burton* : and this, more especially, as all the facts, before us, shew a state of things, in which it would seem probable that the orators would be apt to require, and *Bostwick* willing to give, security for any monies they might be liable to pay, by reason of their previous connexion with him, or their having become security in his behalf. We, therefore, decide that the orators have a joint interest in the four notes assigned them by *Bostwick,* in whatever shape they may now be, whether, in notes, or judgments, or prison bonds : and that the whole amount is comprised in that joint interest.

The two judgments in favor of *Burton,* the defendant, are against *Jonathan Ferris,* only. Yet the same partnership of the orators renders these, in equity, the joint debts of the orators. If

*Jonathan* should pay them, he could
compel *Elijah* to contribute his share.
The remedy upon *Elijah* is more circuitous than that upon
*Jonathan.* But they are jointly liable to pay, or contribute towards paying, these judgments. They have an absolute, a
joint, and an equal interest in paying the same, or procuring
their discharge. There is, therefore, in equity, a complete mutuality in the demands, which the orators pray to have set off
against each other.

The next question presented is, do the circumstances, proved,
show this offset equitable? It is always equitable, that mutual
debts, due in money, should be discharged by an offset rather than that each should collect of the other, unless this equity is
destroyed by some extraneous circumstances shown on the hearing. Hence the provisions of our statute for direct offsets, where
the demands are, in form, as well as substance, mutual. Hence
also, the Chancery law to compel offsets, when injustice would be
the result of refusal. In searching for the equity in the present
case, we find that no sort of partnership existed between the orators and *Bostwick*, during any part of the period, in which the defendant's debts accrued. Further, that *Burton* gave credit to
*Bostwick* alone, and had no suspicion that *Bostwick*, when he delivered him goods, and paid monies for him, was binding or could
bind the orators. There is no ground to suspect, that the orators, at
any time, drew from *Bostwick* the funds which gave him credit, as
charged in the defendant's cross bill. It appears probable, from
the testimony of *Bostwick*, that all the goods he sold to *Burton*
were, in fact, paid for by the orators, except about $500 worth
purchased in *Montreal.* It is a fact not contested, that *Burton*
is so depressed with poverty, that, should the orators pay him the
amount of his two judgments, the only prospect the orators would
have, of collecting the amount of said notes, would be the recovering back the same money so paid upon said judgments. But a
circumstance, that, more than any other, seals the equity of this
offset is, that *Burton* has disclosed in his answer, that it was expressly agreed between him and said *Bostwick*, that, whatever he
should pay for said *Bostwick*, and the amount of the goods he
should deliver him in said lumbering business, should be set off

Franklin, Jan. 1829.

*Ferris et al. vs. Burton.*

against said notes.   The orators pray that this very offset should be made, so far as *Burton* has established the amount of his claims, by recovering judgment for the same.   This the defendant now resists : but the equity is too apparent to be rejected by the court. The defendant however, insists, that, if any offset is made, he is entitled to an allowance of various other claims, besides the two judgments, for goods delivered to, and payments made for, said *Bostwick.* Of these he has furnished a schedule in his answer and cross bill.   These have never been established as claims, even against *Bostwick,* by any recovery ; on the contrary, it appears by the defendant's own showing, that these were all under consideration on the trials in the suits in which said judgments were rendered, and were rejected and disallowed.   Were it not so, they could not be supported in law or equity, as claims against the orators, by any testimony now before the court.   All but one or two items accrued as claims against *Bostwick,* after the assignment of the notes to the orators, and notice back to *Burton,* and his promise to pay to the plaintiffs.   He had given a note to *Bostwick* of three thousand dollars or more, besides the four notes thus assigned to the orators.   He had no right, after such notice, and his promise to pay to the orators, to continue paying to *Bostwick,* or suffer *Bostwick* to become his debtor, so as to create a claim to go against these notes thus assigned.   But it is said these notes were given too large by $496, that amount of goods having been sold after the bills were made out, and before the notes were given ; also that the payment to *Samuel Burton,* of seven or eight hundred dollars, was prior to the giving of said notes.   These rest on similar principles with the others.   There is no pretence that the orators knew this, or had reason to suspect it, or inquired after it.   The defendant knew it, or might have known it : and was bound to know it before he promised the plaintiffs, or be silent about it afterwards.   It appears from the testimony, that the whole amount of all the notes *was* too large by $496 ; but it does *not* appear that either of these four thus assigned, was larger than was intended.   The defendant held another note of three thousand dollars, or more, which might be the one that was too large. He may so treat it, and settle with *Bostwick* accordingly.   He

must so treat it, rather than make an inroad
upon the amount he had promised to pay to
the orators, by facts of which they knew nothing, till it was too
late to seek their remedy upon the endorsor.

These claims being removed out of the way, the decree of the
court is, that the offset be made according to the prayer of the
amended bill, but without cost to either party.   Interest must be
cast on the demands, and the balance ascertained.   If there proves
to be a balance in favor of the orators, that will be decreed them,
and they may have execution for such balance: and the judg-
ments be entered in the suits at law as of 1821, and satisfied by the
offsets, in whole or in part, as the balance of the offsets shall ren-
der proper.

*Allen* and *Phelps*, for the orators.

*Royce*, for the respondent.