JONATHAN M. BLAISDELL *v.* ORLANDO STEVENS AND JOHN NASON.

In Chancery.

Facts occurring during the pendency of a suit in chancery, and after the parties are at issue, must, if deemed important in the determination of the case, be brought in, either by withdrawing the traverse and amending the bill, or by filing a supplemental bill, or cross bill, as the case may be, or they cannot be considered by the court in deciding the case.

A trustee cannot convey title to trust property to one having knowledge either of the trust, or of facts leading directly to a knowledge of the trust.

If the answer of a defendant in chancery be defective, or evasive, it is a ground of exception, but is not cause for making an implied conclusion against the defendant thus answering.

The answer of a defendant in chancery, so far as it is responsive to the bill, is to be considered like the testimony of any other witness; if not explicit, he must be compelled, by exceptions, to give an explicit answer to all the interrogatories.

APPEAL from the court of chancery. The orator set forth in his bill, among other things, that in 1810 one Daniel Ryan died, leaving a large estate, real and personal, and appointing John Nason, David Edmond and John Curtis, and the survivors of them, executors of his last will. By his will he constituted his children, William N. Ryan and Harriet B. Ryan, residuary legatees,—giv-

ing to the former two thirds and to the latter one third of the property,—and directing his executors to take charge of his property and place it in the best possible situation for producing a yearly income for the support of his said children. That said executors accepted the trust, and took possession of the property. That Curtis died, and that, subsequently, one Jonathan Danforth having been indebted to the said Daniel Ryan at the time of his decease, the said Nason and Edmond received a deed to themselves as executors, and in trust for the benefit of said estate, of certain land, in discharge of the said indebtedness. That in 1820 the said Nason and Edmond were removed by the probate court from their office as executors, and one Julius Hoyt was appointed administrator *de bonis non* of the estate of said Daniel Ryan with the will annexed. That the debts of said Ryan were all paid, and the land above mentioned remained the property of said estate. That the said executors never rendered their account to the probate court, and that said Edmond died. insolvent many years since, and that said Nason is now insolvent. That in 1826 William N. Ryan died, and Benj. H. Smalley was appointed administrator upon his estate. That said Smalley inventoried said land as part of the estate of said William N. Ryan, and sold the same, under an order of the probate court, as part of said estate, to one Eli N. Johnson, Feb. 25, 1828, for a full and valuable consideration; which deed was acknowledged and placed on record in April, 1831. That said land was uncultivated, and used as a wood lot, and that said Johnson from time to time, while he remained owner thereof, entered upon and used the lot as a wood lot. That on the 15th of March, 1834, said Johnson conveyed the same land, for a valuable consideration, to the orator, and that the orator used and occupied the same as a wood lot, occasionally going upon it for wood and timber, until the intrusion of the defendant Stevens, hereinafter specified.

The bill further set forth that the defendant Stevens, on the 30th of March, 1835, recovered a judgment against said Nason, and levied his execution, May 28, 1835, on the land in question as the property of said Nason, well knowing that said Nason's title to said land was acquired in trust only for the benefit of the estate of said Daniel Ryan. That on the 16th of November, 1835, the said Ste-

vens procured from said Nason a quitclaim deed of said premises, and that said Stevens, by virtue of said deed and levy, entered upon said land, and cut down and carried off the wood and timber growing thereon. That the orator, believing he had a good title to said land, continued in the occupancy thereof, and that said Stevens commenced an action of trespass against the orator therefor, to the April Term of Franklin county court, 1837. That, at the Sept. Term, 1838, of said court, said Stevens recovered judgment against the orator, which was affirmed by the supreme court, Jan. Term, 1839, on the ground that the orator had not the legal title to the premises.

The bill charged that said Nason never had any title to said land except in trust for the benefit of the estate of said Daniel Ryan, and that said Stevens knew this fact, as well as the particulars of the plaintiff's title.

The orator prayed that an account might be taken of the profits of the land, received by said Stevens, that the title to the land might be perfected in the orator, and that said Stevens might be perpetually enjoined from enforcing his judgment recovered at law in the action of trespass. The injunction prayed for was granted on the issuing of the bill.

The defendant Nason denied in his answer that he received the title to said land in trust, or that the orator had any title thereto; and claimed that there was still due to him, and also to said Edmond, from said estate, a large amount for their services and advances as executors.

The defendant Stevens, in his answer, admitted that the deed of the land was given to said Nason and Edmond, as alleged, and that he had heard and believed that the consideration of said deed was the discharge of a claim due from said Danforth to the estate of said Daniel Ryan, of which said Nason and Edmond were executors; but denied that they acquired the title in trust, or that said Johnson, or the orator, ever owned or were in possession of the lands in question; and claimed that there was still a balance due from said estate to said Nason and said Edmond, as executors.

The last will of the said Daniel Ryan, which was produced in evidence, contained the following clause; "and my executors, or such of them as may survive to complete the execution of this my

last will and testament, are requested the landed and personal prop⸗ erty, which I hereby give and bequeath to my two beloved children, to take charge of, and place in the best possible situation to produce a yearly income for their support and benefit."

The deed from said Danforth, also produced in evidence, specified that the consideration therefor was received from said Nason and Edmond, "executors of Daniel Ryan, late of St. Albans aforesaid, deceased," and appeared to have been executed, acknowledged and recorded April 8th, 1817. The other deeds of conveyance, &c., specified in the orator's bill, were also produced in evidence; and the orator introduced testimony tending to show that said Johnson took possession of said land, and cut wood and timber upon it each winter from 1827 to 1832; and, also, that from 1820 to the time of the death of said William N. Ryan said land was taken charge of and managed by said Hoyt, administrator *de bonis non* of the estate of said Daniel Ryan, as part of said estate.

Benj. H. Smalley testified, on the part of the orator, that, soon after he was appointed administrator on the estate of William N. Ryan,—the estate of Daniel Ryan not having been settled,—he made inquiry, for the purpose of ascertaining what real estate belonged to said estate. That, on inquiry of said Nason, he was informed by him that the land in question belonged to said estate; and that, thereupon, under an order from the probate court, he sold it to said Johnson, as above mentioned. That the sale was in 1828, but that the deed was not delivered until said Johnson paid for the land, in 1831,—but that during said time said Johnson claimed the land as his own. That, in the summer of 1828, said Nason presented his account, as executor on the estate of Daniel Ryan, to the probate court for allowance. That said account contained many charges, and, among others, a charge for the land in question, which the said Nason then claimed had passed into the hands of the legatees, or of the administrator *de bonis non*, and that he ought, therefore, to be allowed the amount of the debt against said Danforth. That several hearings were had on said account, and that finally it was continued to a day on which the judge of probate was prevented by sickness from attending, after which no further hearings were had, and no adjudication was ever had upon the account; but that it remained on file for several years in the probate

office. That in 1833 the defendant Stevens, as attorney for Free-
born Potter, produced said account in court and used the same as
testimony against said Nason, in a suit then pending between him
and said Potter. That since the pendency of this suit this witness
had applied to said Stevens for said account, and that Stevens then
admitted that he had seen it within two or three days, but refused
to show it to the witness. Other testimony was also introduced,
tending to show that said account was in the possession of said
Stevens, and that he had refused to let it go out of his hands.

The defendants introduced testimony tending to show that Wil-
liam N. Ryan had received more of the funds of the estate of Dan-
iel Ryan, than had been paid to said Harriet B. Ryan, by the sum
of $283,67; and that said William N. Ryan had directed that
amount to be paid to said Harriet out of the balance of the estate;
also, testimony tending to prove that said Harriet conveyed all her
right and claim to the residue of her father's estate, July 15, 1829,
to one Carter H. Hickok; and produced in evidence a quitclaim
deed from said Hickok to the defendant Stevens of the premises in
question, executed Aug. 25, 1841, and subsequent to the commence-
ment of this suit.

The court of chancery decreed that the orator was equitably en-
titled to hold two equal undivided third parts of the land in question,
and the defendant Stevens was enjoined from holding or claiming
the same, and was ordered to pay the orator's costs.

*Smalley, Adams & Hoyt* for orator.

I. John Nason and David Edmund held the premises in question
as trustees for the heirs of Daniel Ryan.

The estate was conveyed to them as executors, and is therefore to
be deemed a trust estate. The will of Daniel Ryan authorized the
executors to vest personal estate in real, for the benefit of the de-
visees. Their taking a deed of the premises to themselves, as exec-
utors, is to be deemed an execution of this trust, and not a violation
of duty. If the premises in question are to be deemed as held by
them in their own right, then they were guilty of a breach of duty
in vesting the estate of Ryan in lands for themselves; but if held
by them as trustees, then they performed their duty under the will.
If an act is capable of two constructions, one of which is against

law, that is to prevail which makes the act legal. *Sweet* v. *Jacocks,* 6 Paige 355. *Craig* v. *Leslie,* 4 Peters' Cond. R. 331.

II. Stevens had notice of this trust, and is therefore bound by it.

1. The deed to Nason and Edmond, as executors, is notice to Stevens that they held the premises as trustees.

2. The bill alleges that Stevens had full knowledge of all the facts stated in the bill in relation to the title to the premises, at the time he attempted to acquire a title to them. The defendant, Stevens, does not deny this allegation, but says that he did not know that Hoyt, Johnson and Blaisdell ever *owned* or were in possession of the premises. This is mere evasion and swearing to the law. Whether they *owned* it was a question of law, and this defendant may have one opinion and the court another. But the defendant does not attempt to say that the premises were not *conveyed* to the executors and *claimed* by them, as stated in the bill. If the defendant relies upon his answer as disproving notice, he ought not only to deny the notice alleged, but all the facts and circumstances from which notice may be inferred. *Denning* v. *Smith,* 3 Johns. Ch. R. 345. *Frost* v. *Beekman,* 1 Johns. Ch. R. 288. *Murray* v. *Ballou,* 1 Johns. Ch. R. 566.

3. Stevens, in his answer, admits that he had heard and believed that Nason paid for said premises by discharging a debt due from Danforth to D. Ryan's estate. If the purchase money for the premises was paid by the estate of Daniel Ryan, then there was a resulting trust for the benefit of Daniel Ryan's heirs; and Stevens admits that he had notice of this trust. If so, it is difficult to discover any good reason why he ought not to be affected by it.

4. The fact that Nason had charged this land in his account in the probate office as having passed to the heirs of Daniel Ryan, and that Stevens had notice of this fact, is sufficient to charge Stevens with notice that this estate was held by the executors in trust. That Stevens had notice of this account cannot be doubted when the circumstances under which he had and used that account are considered. Whatever is sufficient to put a purchaser on inquiry is deemed sufficient notice. Sugden's Vendors 532. *Green* v. *Slayter,* 4 Johns. Ch. R. 39, 44—46. *Anderson et al.* v. *Van Alen,* 12 Johns. 343.

III. If Blaisdell had an equitable title to two equal undivided

third parts of the premises at the time Stevens commenced his action of trespass and recovered judgment therein, it remains to be seen upon what equitable principle he ought to pay, by way of damages in an action of trespass for entering upon his own premises, the full value of all the timber he cut upon them. *Marine Ins. Co.* v. *Hodgson,* 2 Peters' Cond. R. 516. *De Riemer et al.* v. *Cantillon,* 4 Johns. Ch. R. 85.

*Stevens & Seymour* for defendants.

1. From the answer of Nason, which is uncontroverted by other testimony, it appears that the estate of Daniel Ryan was, at the time of the taking the deed from Danforth, and still is, indebted in a large amount to the defendant Nason.

2. But, if the land in question was received in trust for the heirs of Daniel Ryan, it equitably belongs to Harriet, daughter of said Daniel, or her assignees. The orator, in order to sustain his claim, must show an equitable title in William N. Ryan at the time of his death, and that that title has been regularly conveyed to the orator. It appears from the testimony that William N. Ryan had received from the estate of his father so large an amount that Harriet was entitled to receive $283, 67 from said William, or from the estate of said Daniel, in order to make her share equal to what had been received by said William; this amount he directed, by written agreement, should be paid to Harriet out of the remainder of the estate. This has never been done, and, Harriet having conveyed her interest in the remainder of her father's estate, we insist that her assignee is entitled to the preference over those claiming under William N. Ryan,—especially since all the legal interest of said William in the estate of his father, remaining at the time of the death of said William, has been disposed of by the administrator of said William, so as to leave no funds, belonging to the estate of said William, out of which to pay the balance due to said Harriet.

3. But should the court consider the equities of the parties equal, then we insist upon the application of the rule, that, between such equities, the court will not interfere to disturb the possession, when that is supported by a legal title.

24

The opinion of the court was delivered by

REDFIELD, J. Most of the questions arising in this case, are questions of fact, rather than of law. That portion of the defence resting upon title derived from Harriet Ryan, which was not obtained until after the parties were at issue in the case, and which has not been brought into the issue by any subsequent proceedings, cannot be considered in deciding the case. When a fact occurs during the pendency of a suit in chancery, which it is deemed material to have considered in deciding the case, leave must be obtained by the orator, if it be on his part, to withdraw his traverse and amend his bill, or file a supplemental bill, or by the defendant, if on his part, to file a cross bill, in order to bring the new matter within the issue, that testimony may be taken on both sides, if desired.

As it regards those matters, which were in issue, there can be little ground of controversy. The defendant's answer may be in some respects defective, and in almost every particular, respecting notice of the trust, inexplicit, if not evasive; but sufficient is admitted and proved, to show that Stevens did have knowledge of the trust, or at least knowledge of such facts, as were sufficient to put him on inquiry. Any *defects* in the answer must have been supplied by taking exceptions and obtaining, in the proper mode, a further answer. If a defendant omits to answer, or answers evasively, it is not to be taken as an implied admission against his interest; but he should be pushed to a distinct and explicit declaration as to how the facts are, the same as any other witness,—for such to all intents he is in answering the bill. This not having been done, the evidence must be taken as it is, and not as we may suppose it would have been.

1. It appears then, by the declarations of the defendant Nason and the other testimony in the case, that this whole estate was in fact a trust estate in the hands of Nason. 2. This substantially appeared upon the face of the deed to Nason, in connection with the probate proceedings, of which Stevens had either knowledge, or knowledge of such facts as were sufficient to put him on inquiry. For if one have knowledge of distinct facts, affecting the title of land which he is about to purchase, he is not at liberty to

close his eyes, and then screen himself under a plea of ignorance of other facts connected with those facts already known to him ;— but he is bound, in good faith, to make reasonable inquiry, and will be presumed to have done so, and will be affected with notice of all such facts as he might have learned by such inquiry. Then, after finding Nason's deed from Danforth expressd to be to him and others as executors of Daniel Ryan,—that is, that the consideration moved from them in their capacity of executors,—and that by the will they had a discretion to invest personal property in real estate, and *vice versa,* if they deemed that necessary, (for their discretion is wholly unlimited,) finding that the estate of Daniel Ryan was large, and that Nason had never settled any administration account, we have no doubt he is to be considered as knowing all the facts in the case, going to show the estate trust property.

It only remains to determine whether Nason could convey a good title to property, which he held in trust, to one knowing the trust. The law upon this subject is this : "In every case, when the trust money can be distinctly traced, a court of equity will fasten a trust upon the land, [or other property, purchased with the money] in favor of the persons beneficially entitled to the money." 2 Story's Eq. 457. If the trustee make the investment in fraud of the trust, the *cestui que trust* has an election, whether to accept of the thing thus purchased, or not. But where executors have a discretion in regard to the investment of property, or where there has been a necessity of receiving it in payment of a debt, as in the present case, the *cestui que trust* is bound to take the thing, thus purchased.

Decree of the chancellor affirmed with costs.