VEILE AND WIFE *v.* BLODGETT AND WIFE.

[ IN CHANCERY.]

*Effect of Answer as Evidence. Right of Cestui Que Trust to Follow Trust Fund.*

The oratrix, while an infant, and before her intermarriage with the orator, inherited money which her father and guardian, the defendant B., received and paid, without consideration, to a brother of the defendant wife, for her benefit, with an understanding that it was to be paid for certain premises that she was then about to and subsequently did, purchase, using said money in paying therefor, and taking the title thereof, in her own name. Defendants afterwards intermarried, and separated. Orators brought suit at law against defendant B. for said money, and attached said premises, which had been mortgaged by his wife before marriage, and procured a part of the equity of redemption therein to be set off on execution as the estate of B. There was a question as to whether or not one of the appraisers in such proceedings was a freeholder. The orators then filed a bill to perfect their title under the levy, and to compel defendants to release their interest in the land. B. testified that he *loaned* said money to his wife before marriage. *Held*, that as B. had no right to loan the money; as the loan was not legalized by his marriage; as the wife, standing on B.'s right, could acquire no right to a homestead out of the trust property; and as the relation of the wife to the money and the property purchased therewith, was that of a mere volunteer,—she was charged with a constructive trust in favor of the oratrix; and that, as no proceedings at law were essential to the attainment of the orators' rights, and as whether or not one of the appraisers was disqualified was therefore unimportant, equity would give the relief sought.

The answer is evidence only where it is a clear, positive, and direct denial of the allegations of the bill.

To overcome the evidence of such an answer, it is necessary that there should be only enough evidence to outweigh it, the answer being equivalent to the deposition of one witness.

APPEAL from the Court of Chancery.

The bill alleged that the orator and oratrix were husband and wife, that the oratrix was the daughter of the defendant Luther P., and that before she arrived at her majority, and before her intermarriage with the orator, she inherited and became lawfully entitled to the sum of $3500 ; that afterwards the said defendant was appointed her guardian, and as such received said sum of money, and that he had never paid nor in any manner accounted

for it, nor settled his guardianship account; and that at the time of the judgment thereinafter mentioned, he was justly indebted to the oratrix by reason of his receipt of the said money in the sum of $1,918.75 ; and that the same remained wholly unpaid unless paid by the set-off of real estate thereinafter mentioned ; that on June 9, 1865, one Mary Ann Hinckley purchased and took in her own name a deed of certain land in the city of Burlington, with a dwelling house and out buildings standing thereon ; that the said defendant then or about then, " paid in money towards the consideration " thereof, through one O'Grady, a brother of said Mary Ann, the sum of $2000, which was paid " wholly or mainly " with the money of the oratrix ; that afterwards the said defendant and the said Mary Ann intermarried ; that after their intermarriage the orators attached the said land, &c., intending thereby to create a legal lien upon the said Luther P's interest therein, and by regular and orderly proceedings, procured judgment and execution thereon, and, the land having been mortgaged by the said Mary Ann, levied execution on part of the equity of redemption in said premises, as the proper estate of the said Luther P., and had it regularly set out in full satisfaction of their said execution, and procured the same to be recorded ; that, the defendants having separated, the defendant Mary Ann was, at the time of the filing of the bill and long had been in exclusive possession of the premises, claiming to be the sole owner thereof in fee to the exclusion of the orators ; and that the defendant Luther P. was at the time of the filing of the bill, and for a long time had been, insolvent and destitute of other property. *Prayer,* that said levy and set-off might be established as valid and effectual, and the orators' title thereunder established ; that the defendant Mary Ann might be enjoined from impeding the orators in the enjoyment of the premises, and from setting up any adverse rights thereto ; that the defendants might be decreed to execute a full release of their right, title and interest therein to the oratrix ; and for general relief.

The defendant Mary Ann answered, denying that the oratrix inherited $3,200 in her own right, and alleging that she inherited, as the defendant had been informed and believed, about $700 which had been paid to her; admitting the purchase of the land,

&c., as alleged in the bill, and alleging that before said purchase the defendant Luther P. solicited defendant Mary Ann to marry him, and as an inducement thereto assured her that he had a good salary in a government office, and owed nothing, and promised to give her the sum of $2,000 out of said salary; that relying upon said assurance and promise, and in consideration thereof, she agreed to marry him, and that in pursuance of said agreement the defendant Luther P. paid over to her brother the sum agreed upon, which she afterwards received and paid towards the said land, &c., but positively denying that the said Luther P. "paid any money to her for the purchase of said place out of any money belonging" to the oratrix, or otherwise than as stated in consideration of said promise of marriage; admitting the marriage, but alleging that the defendant Luther P. deserted her, and that during the time they lived together she supported him, alleging that she had paid all the taxes on the premises, and had paid large sums for repairs, that she had a homestead right in said premises, of which no creditor could in any event deprive her, and upon which she insisted; that defendant Luther P. asked her before deserting her, to convey the property to him, that she believed that he and the orators confederated to get said property away from her, and that suit was brought against said Luther P. and judgment therein consented to by him in furtherance of that design; that defendant Luther P. paid for education, board, and outfit of oratrix more than she inherited; denying the legality of levy and set-off, and alleging that one of the appraisers of the property was not a freeholder, that said judgment was collusive and fraudulent, that the $2,000 paid towards said property was not the identical money that she received from defendant Luther P., and insisting that if the money paid to her was not to be considered as a payment in consideration of her promise of marriage, or as an ante-nuptial settlement, it could be regarded only as a loan against which she had a legal right to set off all sums that she had paid for the defendant Luther P's support, and that if the orators had any legal right to said property, they had a complete remedy at law.

The answer was traversed, and the testimony of the oratrix and

Veile and Wife *v.* Blodgett and Wife.

of defendant Luther P. was taken, and tended to support the allegations of the bill, except that defendant Luther P. testified that he loaned the money to defendant Mary Ann. No other testimony was taken on either side, but it was admitted that two of the appraisers were freeholders, that the third, one Tracy, was the husband of the owner in fee of a lot of land, and that he and his wife had lawful issue living at the time of said set-off.

On the hearing at the December Term, 1875, before PIERPOINT, Chancellor, it was ordered, adjudged, and decreed that the levy and set-off and the orators' title thereunder be established as legal and valid; that the defendant be perpetually enjoined from impeding or interfering with the use and enjoyment by the orators of the premises so set off, and from setting up or asserting any right or interest therein adverse to the rights of the orators under said set-off; and that the defendants within thirty days execute a valid quit-claim deed of the interest in the premises so set off to the oratrix. Appeal by the defendant Mary Ann.

*E. R. Hard,* for the orators.

The case is within the appropriate and exclusive jurisdiction of a court of equity. *Rowan* v. *Union Arms Co.* 36 Vt. 124, 138; *Buck* v. *Gilson,* 37 Vt. 653; *McLane, admr.* v. *Johnson,* 43 Vt. 48, 61; *Eldridge* v. *Smith,* 34 Vt. 484.

If the identical money advanced by defendant Luther P. to defendant Mary Ann belonged to the oratrix, the defendant Mary Ann, by taking the conveyance to herself, became trustee for the oratrix to the extent of such investment, and the latter is entitled to relief independently of the attachment and set-off. Or if that identical money did not belong to the oratrix, but to the defendant Luther P., she, being his creditor, and having obtained judgment, and set off the land on execution, both the defendants being insolvent, is entitled to the relief sought, whether the money so furnished by defendant Luther P. is treated as an investment by him in the property, or as a loan to the defendant Mary Ann.

The set-off on execution was in conformity with the statute.

Tracy, being tenant by the curtesy, was a freeholder. 1 Washb. Real Prop. 60, 61; 1 Cruise Dig. 147 *et seq.* But even if he was

35

not a freeholder, *quære*, whether the levy would be voidable. Gen. Sts. c. 15, s. 13; *Danforth* v. *Beattie*, 43 Vt. 138. And if the want of freehold qualification would, in any case, avoid a set-off, it is not available against the orators.

The orators are entitled to the relief sought upon the facts stated in the bill. The bill states that $2000 was paid defendant Luther P. toward the consideration for the place, and that the money was wholly or mainly that of the oratrix; and as the answer of the defendant Mary Ann distinctly admits the receipt of the money by her, and the investment of it in the land, but denies the payment of any money to her for the purchase of said place out of any money belonging to the oratrix, or otherwise than as stated in consideration of promise of marriage. The answer is not responsive, because the bill does not allege that he paid the money to her. Treating the words " or otherwise," &c., as a denial that the money was invested in the place, they are too general to be available as evidence. Story Eq. Pl. s. 852; *Woods* v. *Morrill*, 1 Johns. Ch. 103.

The answer being traversed, but a small part of it can be considered evidence in favor of the defendants, because it is not responsive.

All that the answer contains relating to the pretended agreement between the defendants that the defendant Luther P. should pay her $2,000 as a consideration for her promise to marry him, should be excluded as evidence, because it is not responsive to anything stated, charged, or inquired about in the bill, but is purely affirmative matter set up in avoidance of the orators' claim. 2 Dan. Ch. Pr. 840–3 and notes; Story Eq. Pl. s. 849 a; *McDaniels* v. *Barnum*, 5 Vt. 279; *Mott* v. *Harrington*, 12 Vt. 199; *Cannon* v. *Norton*, 14 Vt. 178; *Lane* v. *Marshall*, 15 Vt. 58; *Pierson* v. *Clayes*, Ib. 93; *McDonald v. McDonald*, 16 Vt. 630; *Sanborn* v. *Kittridge*, 20 Vt. 632; *Busby* v. *Littlefield*, 33 N. H. 76; *Clark* v. *White*, 12 Pet. 178; *N. E. Bank* v. *Lewis*, 8 Pick. 113; *Eldridge* v. *Smith, supra; Green* v. *Hart*, 1 Johns. 580, 589.

Although a statement in an answer is responsive to the bill, still, if it is improbable, it may be overcome by less testimony than might be otherwise necessary. No strained construction of the

rule requiring more than the testimony of one witness to overcome a responsive statement in an answer, should be adopted in a case like this.

*Wales & Taft* (*Levi Underwood* with them), for the defendants.

I. The orators come as the creditors of defendant Luther P., and if they have any title by virtue of the levy it must be his title. It is plain that he never had any title to the premises in question upon the orators' own showing, without reference to the defence. A resulting trust did not arise, because the $2000 transaction was a loan. *McCue* v. *Gallagher*, 23 Cal 51. From the orators' showing it is apparent that it was not the understanding or expectation of the parties that defendant Luther P. should ever take any title. That is also fatal to the trust. *White* v. *Carpenter*, 2 Paige, 217, 238, *et seq.*, 265; *Jackson* v. *Fuller*, 2 Wend. 465; *Byers* v. *Danley*, 27 Ark. '77 *et seq.*; *Junnard* v. *Littell*, 23 N. J. Eq. 264; *Gledewell* v. *Spaugh*, 26 Ind. 319. The $2000 transaction was not fraudulent as to creditors. The proof shows that defendant Luther P. was solvent at the time, and even if he were not, his estate was not decreased thereby. A debt was due him for the amount. Four years afterwards that debt was cancelled by the marriage and legally extinguished. *Burleigh* v. *Coffin*, 2 Fost. 118. Such legal extinguishment of the debt could not have given the defendant Luther P. any title to the premises. If the $2000 had been paid as a gift after the marriage, instead of as a loan in contemplation of marriage, as the orators' case shows, no resulting trust in defendant Luther P. for the benefit of his creditors would have been created even if he had then been insolvent. *Wheeler* v. *Kirtland*, 23 N. J. Eq. 16 *et seq.* The fact that it is alleged that the $2000 was the money of the oratrix does not help her case. If that was so, with proper notice the loan would have created a debt from the defendant Mary Ann to the oratrix. No resulting trust would have been created for the reasons before stated, and if such trust did result it would result to the oratrix and not to defendant Luther P. *Russell* v. *Allen*, 10 Paige, 249.

II. The answer of defendant Mary Ann is responsive to the bill, and is therefore evidence in her behalf. The only evidence on the other side as to the $2000, is that of defendant Luther P., and upon this evidence the court must find that the $2000 was paid upon the consideration mentioned in the answer. 1 Dan. Ch. Pract. 844 and note. In this view the $2000 was paid upon consideration of marriage, which is a valuable consideration. 1 Chit. Cont. 27; *Brown* v. *Slater*, 16 Conn. 192.

Such being the case, neither defendant Luther P. nor his creditors had any interest in the $2000 after it was paid, much less in the premises here claimed. *Wheeler* v. *Kirtland*, *supra.*

Defendant Mary Ann does not appear here as a person fraudulently trying to keep property away from creditors, for she had no notice of the orators' claim. The fraud and collusion is all upon the other side, and consists in the collusion of the orators and the husband to cheat his deserted wife out of her estate in the interest of the surety on the guardian's bond of the husband. A court of equity will not lend its aid in such a case unless the legal right is very clear.

III. The levy in this case was void because one of the appraisers was not a freeholder, and the defendant may raise this question here because this is her first and only opportunity to do so.

The opinion of the court was delivered by

Powers, J. Before proceeding to a consideration of the various points made in argument touching the claims of the orators to relief, it becomes necessary to ascertain precisely the facts that are established by the proofs.

The defendant Luther P. makes no answer to the bill; and he is the witness relied upon by the orators to establish their case. The other defendant, Mary Ann, filed an answer to the bill, but adduces no evidence in support thereof, and her defence thus wholly stands upon her answer. Her answer is traversed, and much has been said in the case as to the effect that is to be given this answer as proof.

The general rule in equity upon this subject, as has often been declared, is, that two witnesses, or evidence equal to that of two witnesses, is required to overcome the sworn answer of the defendant, responsive to the bill. Other authorities say the rule requires one witness with corroborating circumstances. The rule has its basis in the fact that the answer is called out by the orator for his own use. If it admits the fact charged in the bill to be true, the orator adopts this admission as sufficient proof of the fact. If the answer denies the fact charged, the orator is left to establish it by other means, if he can, and at the same time the denial is evidence for the defendant. The denial is made evidence by the circumstance that the orator has called it out for the purposes of proof, and thereby made it proof.

But the rule, as often announced, respecting the effect of the answer as proof, is, we think, misleading, as a careful examination of the authorities will show. The weight of evidence does not depend upon the number of witnesses that depose to given facts. The burden of proof, when an answer is responsive to the bill, devolves upon the orator to satisfy the trier that such answer is untrue; and this burden may be oftentimes discharged by documentary proof or circumstantial evidence, without the deposition of any witnesses testifying to the facts set out in the bill. 2 Dan. Ch. Pr. 840, n. 2.

It is obvious that a sworn answer, responsive to the bill, stands as the deposition of one witness; and if encountered by only one witness testifying in contradiction, and no circumstances appear affecting the case, no preponderance of proof is made out on either side, and the orator must fail because the burden of proof is upon him. But the answer, considered as evidence, is to be weighed precisely as it would be if it appeared in a deposition disconnected from the defendant's pleading; and the fact that the defendant is interested in the event of the suit, has the same effect in discrediting his story that it does in an ordinary case at law. Again, if the answer is evasive or equivocating, it lessens its force as evidence precisely as such circumstances impair the story of a witness told on the witness stand. In short, the answer, when used as evidence, is subject to the same proper criticism, and the same

legal 'infirmities, that attach to all evidence, in whatsoever form it is introduced in court.

All that the orator is bound to do is, to meet and overcome the answer by competent proof. This proof may require one or twenty witnesses; it may be made without any. "It is important to state here the true import of the rule in equity, that an *answer responsive to the allegations and charges made in a bill,* and which contains clear and positive denials of them, must prevail, unless it is overcome by the testimony of two witnesses, or at least by one witness and attendant circumstances. * * * * * The rule as stated *has reference to an answer opposed only by the testimony of one witness.* But if the evidence in the cause, no matter what it may be, is sufficient to outweigh the answer, the plaintiff may have a decree in his favor." Mitf. Ch. Pl., Tyler's ed., 1876, 462. The foregoing extract from Mitford, who has been justly called the "master of equity pleading," states the rule in satisfactory terms.

Another rule relating to the answer as evidence is important to be noticed here. The authorities all agree that the answer is evidence only when it is a direct and explicit denial of the allegations made in the bill. If it denies such allegations on information and belief, it is not evidence. If the defendant sets up other matters in confession and avoidance of the charges made in the bill, such other matters are not evidence. Such allegations in the answer are mere pleading, and if relied upon by the defendant, must be 'made out by proof, if the answer is traversed.

The bill in this case in substance charges that the defendant Luther P., being the trustee of the oratrix Mary Jane, "paid in money towards the consideration" of the purchase of certain premises in Burlington, bought by the defendant Mary Ann—the title to which was taken in the name of the said Mary Ann—the sum of two thousand dollars; and that this sum of two thousand dollars was money held by Luther P. as trust money belonging to the oratrix. And the bill seeks to follow this money into the land so purchased, and charge the same with a trust in favor of the oratrix.

The gist of the charge in the bill upon this point is, that Lu-

ther P. *misapplied* the trust fund by using it in payment of the purchase money of the premises bought by Mary Ann. The trustee had no right thus to invest trust funds, taking no security for repayment, and upon such breach of trust, the *cestui que trust* may follow such funds so long as they can be traced, unless they or their product have come into the hands of a *bona-fide* purchaser for value without notice of the trust.

The defendant Mary Ann seeks, in her answer, to stand in the relation of such *bona-fide* purchaser to this fund. After denying the payment of the money to her towards the purchase money of the premises, she avers that she received the money as the consideration of her promise to marry the defendant Luther without notice of its being trust money. This part of her answer is in no sense responsive to the bill. If true, it would be a good defence to the claim of the orators. *Jackson* v. *Rowe*, 2 Sim. & Stu. 472. But as it stands, it is not evidence in the case to be considered. The case, then, is to be determined upon that part of the answer that is claimed to be responsive, and the counter proofs. The denial of the answer to the charge of the bill is somewhat evasive ; it hardly comes within Mitford's statement that it must contain a " clear and positive " denial of the allegation, in order to be proof. She denies " that said Luther P. paid any money to her for the purchase of said place out of any money belonging to said Mary Jane," &c. The " clearness " and " positiveness " of this denial will be seen by looking at the allegation she is by the bill called upon to admit or deny. It is, " that Luther P. paid in money towards the consideration of said purchase," &c. It may not have been paid *to her*, and still may, as charged, have been paid to the vendor or some agent towards the consideration of said purchase, and for her benefit. Nor do the words, " or otherwise " help the denial, for the whole allegation is limited to a payment to her. If she, as a witness on the stand, in answer to the question, " Did Luther P. pay any money towards the consideration of that purchase ?" had replied, " He paid none to me," it is more than probable that she would be troubled with a renewal of the inquiry. She admits the receipt of two thousand dollars in money from Luther P. in 1865. This was four years

before her intermarriage with said Luther P. We are entirely satisfied on the evidence that this money was delivered by Luther P. to O'Grady, a brother of Mary Ann, and for her benefit, with an understanding that it was to be paid out as the purchase money of the premises in question, that it was so paid out by said Mary Ann, and that the title to the premises so purchased was taken in her name, and that as the case stands, her relation to the money and to the premises purchased with the money is that of a mere volunteer. She holds trust funds which belong to the oratrix, without consideration, a constructive trust is thereby raised in favor of the oratrix. 1 Perry Trusts (2d ed.), ss. 217, 241; Hill Trustees (4th Am. ed.), 274 and notes. A *volunteer* receiving or dealing with trust funds, stands in the same position as a purchaser buying trust property with notice of the trust; he will be charged with a constructive trust in favor of the true owner, and upon the demand of the true owner, equity will decree a conveyance to him or charge the estate with the payment of the money. 1 Perry Trusts, *supra;* Hill Trustees, *supra; Blaisdell* v. *Stevens et al.* 16 Vt. 179; *Abell* v. *Howe et al.* 43 Vt. 403; *Boursot* v. *Savage*, L. R. 2 Eq. 134; *Hopper* v. *Conyers*, L. R. 2 Eq. 549.

It is urged by counsel, that Luther P. testifies that the money was loaned to Mrs. Hinckley, and that no trust can arise in such case. It is unquestionably true, that a loan of money from A to B, will not raise a trust in favor of A in the estate purchased by B with the money; but the fallacy of the defendant's position is in the fact assumed, that Blodgett had the right to make the loan. In the case supposed, if the money loaned by A was not his, but trust funds belonging to C, there would be no difficulty in fastening the trust in favor of C upon the estate. 2 Perry Trusts, s. 832; *Ernest* v. *Craysdill*, 2 De G. F. & J. 175. The trust so fastened upon the estate purchased, grows out of the breach of trust in misapplying the fund.

It is further insisted in the answer, that the defendant Mary Ann has a homestead in the premises, as against the rights of the orators. It is an established doctrine in the law of trusts, that a trustee cannot make any profit out of the trust property, or ac-

quire any title thereto, as against the *cestuis que trust.* Luther P., then, could not buy a homestead with the trust money, and hold it against the oratrix. Can the defendant Mary Ann, receiving the trust money without consideration, have any greater protection in its use than Luther P. on whose right she stands?

Counsel further insist that the money was loaned to Mary Ann by Luther P. before their intermarriage, and that the subsequent marriage of the parties had the effect to extinguish the debt; but this position is not well taken. The wrongful act of Luther P. in loaning the money is not legalized by the marriage. It is not in the power of a trustee, by gift, loan, or other disposition of the trust fund in any manner whatever, to a mere volunteer, to put it beyond the reach of its rightful owner.

Again it is said that the proceedings of the orators in obtaining their judgment at law, and in making the levy and set-off on their execution, were irregular, and that the defendant Mary Ann may question those proceedings, inasmuch as this is her first opportunity to do so. She was no party to those proceedings, and when they are made use of as the foundation of ulterior proceedings affecting her rights, she no doubt may call such proceedings in question if they have operated to her prejudice.

The proceedings at law were taken to ascertain the amount due from the trustee to his *cestui que trust,* and they resulted in fixing a sum *less* than the amount which Mary Ann confessedly received.

The orators having established the amount of their claim, proceed in the usual way to collect it by levying their execution upon the premises in question; but fail to reach the title because the apparent legal title is in a volunteer instead of the trustee, where it ought to be. Under such circumstances, equity will treat the title as it should be; and extend the lien of the levy and set-off to the estate to which it rightfully attaches; and whether one of the appraisers was qualified to act is wholly unimportant. The proceedings in equity are instituted in order to reach the trust money, or the estate standing in lieu of it; and the particular form in which a lien is engrafted upon the estate, so long as no more than what is rightfully due is demanded, is a matter of minor importance. Under the facts of this case, no proceedings at law

36

were essential to the attainment of the orators' rights. A valid lien upon this estate could have been established by proceedings in equity. The course pursued leads to the same result, and does not prejudice any rights of the defendant.

A court of equity on the chase after trust money, will not stop to speculate long over a choice of routes, so long as all lead to the desired destination.

We discover no reason why the premises in question should not be subjected to the demand of the orators in the manner directed by the Court of Chancery, and accordingly the decree of that court is affirmed, and the cause remanded.