McLane *v.* Johnson.

ALEXANDER McLANE, ADM'R OF JESSE JOHNSON'S ESTATE, *v.* JONATHAN JOHNSON.

[IN CHANCERY.]

*Equity Jurisdiction. Pleading. Demurrer. Parties. Offset. Administrator. Assignee or Equitable Owner. Parol Evidence. Receipt. Contract.*

1. A demurrer to a bill for want of equity is waived unless it is brought on to hearing before the bill is answered and heard on the merits.

2. OFFSET. The subject-matter of set-off is an original head of equity jurisdiction; thus, the defendant purchased claims allowed against the estate with the money of the estate advanced for that purpose by the orator as administrator; *Held,* that a bill in equity will lie to compel an offset of the claims to the amount of the dividends to become due thereon; and for any balance due the orator.

3. The orator is entitled to have the *status* of these claims fixed by a decree in chancery in advance of any order of the Probate Court for their payment.

4. JURISDICTION. At law there could not be an offset of these claims, even if they were originally payable to the defendant; as the orator's demands accrued to him in his administrative capacity, and it would alter the course of distribution.

5. PARTIES. The defendant and one C. were interested as sureties on some of the notes so purchased; but it was agreed that the defendant should account for the money advanced; *Held,* that C. was not a proper party.

6. PAROL EVIDENCE—RECEIPTS—CONTRACT. Parol evidence is admissible to

McLane *v*. Johnson.

explain an accountable receipt for money, and to prove the basis of the accountability, and when and to whom the accounting is to be had.

7. Statute of Limitations. The Statute of Limitations is not a bar; as by the agreement the time has not arrived for the application of the dividends to money advanced nor the payment of the balance.

8. Answer as Evidence. An answer as evidence is to be weighed like other evidence. No more weight is given to it because it is one of the pleadings.

Bill in Chancery. Heard on the pleadings and a special master's report and the exceptions thereto, December Term, 1885, Orange County, Rowell, Chancellor. It was decreed that the moneys advanced to the defendant and paid out at the request of the defendant by the orator from the funds of the estate of which orator is administrator, as specified in the report of the master, to the amount of $9,585.79, with the interest included therein to January 1, 1886, as is computed by the master, be allowed to the orator as against the defendant.

And that there be allowed to the defendant against the orator as administrator the following claims as allowed by commissioners January 2d, 1867, viz.: The Andross and Holton notes, the Arnold, Cilley, Frye and Hunkins notes, all amounting to $3,712.16, and also the claims against the said estate bought by defendant, amounting to $1,109.61, one-half of the claims of J. & R. C. Johnson against the estate, being $298.50, the Johnson Chamberlain claim of $450, making in all the sum of $5,570.27, and interest from the date of commissioners' report, January 2d, 1867, to January 1, 1886, as appears in the report of the master, to the extent of the percentage upon said claims allowed by the Probate Court of the District of Bradford, whenever a dividend is declared upon the claims against said estate.

And it is ordered and decreed that said dividend upon said sum allowed to the defendant, when ascertained, shall be offset against the sum above named as allowed to the orator to the extent of said dividend. And should there be a balance due the orator, after allowing said offset, then the defendant shall pay said balance to the orator.

The orator's exhibits, 2, 3 and 9, were.:

### EXHIBIT 2.

Bradford, April 13, 1869. Received of Alexander McLane, administrator of the estate of Jesse Johnson, late of Fairlee, deceased, the sum of $1,200, to be accounted for in the payment of certaint claims against said estate allowed by commissioners, and particularly the claims of Buckley, Holton and Johnson Chamberlin, said claims being founded upon notes which the said Jesse Johnson gave the said Holton and said Chamberlin, and which I also signed as surety.

 Rev. stamp.     (Signed)     JONATHAN JOHNSON.

### EXHIBIT 3.

Bradford, April 17, 1869. Received of Alexander McLane, administrator on the estate of Jesse Johnson, late of Fairlee, deceased, the sum of $1,700, to be accounted for in the payment of certain claims against said estate allowed by the commissioners, and particularly the claim of J. W. Andross, said claim being upon a certain note which the said Jesse Johnson gave the said Andross, and which we, each of us, signed as surety $1,700.

 Rev. stamp.     (Signed)     JONATHAN JOHNSON.
M. R. CHAMBERLIN.

### EXHIBIT 9.

$500.                    BRADFORD, April 9, 1875.

For value received of Alexander McLane, administrator of Jesse Johnson's estate, I promise to pay him or order $500 on demand with interest.                    JONATHAN JOHNSON.

The master found, in part:

"Among the claims allowed by the commissioners against said estate there was a number on which the defendant appeared as surety for the said Jesse Johnson, deceased, and the defendant's name and that of M. R. Chamberlin were on two notes as surety for the deceased, on which was allowed by the commissioners, $1,421.11 to John W. Andross, and one to Buckley Holton for the sum of $1,076.78.

" About April, 1869, suit was brought upon one or both of these notes against M. R. Chamberlin and the defendant Johnson to enforce the collection of these notes against them.

" The defendant and said Chamberlin conferred together to see what could be done to pay these notes. It was arranged between them to apply to the orator as administrator, to see if he could not let them have the money to pay these notes. The defendant Johnson met the orator, and it was agreed between them that the orator should then advance to them $1,200 to pay the Buckley Holton note, and that he would in a few days let them have a further sum sufficient to pay the Andross note.

" The orator then had the money in his hands belonging to said estate to pay said notes without any immediate occasion for its use. In getting this money of the orator, Moses R. Chamberlin was equally interested with defendant Johnson.

" And it was agreed between the orator and the defendant that the orator would let the defendant have the money required to pay the Holton note and the Andross note, and the defendant was to hold said notes against the orator administrator the same as the original party would have done, and on the settlement of said estate the dividend on these notes was to offset against the money thus advanced by the orator as administrator as aforesaid.

" And at this time or within a few days of this time, it was further agreed that the orator should from time to time let the defendant have money in like manner, and to purchase in claims against said estate, and on settlement of said estate the dividend on said claims so purchased in by the defendant were to be offset against the money so advanced to the defendant by the orator.

" The money advanced by the orator to the defendant under agreement, the aforesaid is represented in the orator's exhibits 2 to 9 inclusive, and it was further stipulated by the orator and the defendant that said sums so advanced by the orator to the defendant should draw interest from the date to the time of the settlement of said estate, when it was understood by the parties that an offset should be made, and the party being found in arrear should pay to the other the amount so in arrear.

" Item No. 4 is called the Rice note, dated May 4, 1864, for $200. This note was signed by Jesse Johnson, the deceased,

McLane *v.* Johnson.

Jonathan Johnson and M. R. Chamberlin, and payable to Abel M. Rice.

"One Wm. C. Arnold became the owner of this note before the decease of Jesse Johnson, and it was allowed in favor of said Arnold by the commissioners.

"The defendant and M. R. Chamberlin requested the orator to pay said note, and the orator did so; and they were to account to the orator as though they held the note to account to the orator for any deficiency that might arise by reason of the estate being short of paying in full.

"In relation to orator's exhibit No. 9: At the date of this note the defendant met the orator and wanted to get five hundred dollars upon the same terms and agreement he had had the money represented by orator's exhibits above named. And the orator let him have it on the same terms the rest of the money named in orator's exhibits was furnished, and being in a hurry the orator put the amount into a note."

The other facts are sufficiently stated in the opinion.

*John H. Watson,* for the defendant.

The orator's exhibits, 2 and 3, are contracts, not mere receipts; hence, parol evidence was not admissible. Story Bailm. ss. 137, 159, 171; *Winn* v. *Chamberlin,* 32 Vt. 318; *Randall* v. *Kelsey,* 46 Vt. 158; *Brown* v. *Hitchcock,* 28 Vt. 452; *McGregor* v. *Bugbee,* 15 Vt. 734; 1 Greenl. Ev. s. 305; 8 Wall. 325; *Aldrich's Adm'r* v. *Hapgood,* 39 Vt. 621. Parol evidence was not admissible to vary the terms of exhibit 9. *Brown* v. *Spofford,* 95 U. S. 482; *Morse* v. *Low,* 44 Vt. 565; *Bradley* v. *Bentley,* 8 Vt. 243; *Gillett* v. *Ballou,* 29 Vt. 296; *Brown* v. *Willey,* 20 How. (U. S.) 442.

The rule is the same in equity as at law. 14 Pet. 206; 8 Wall. 573. It should have been alleged that the estate was settled. Story Eq. Pl. s. 257; *Brown* v. *Bank,* 31 Miss. 459; 1 Dan. Ch. 369. The bill is demurrable. *Downer* v. *Dana,* 17 Vt. 518. Such facts must be alleged as show a present right in the orator.

When a party seeks specific performance he must show as a condition precedent to his obtaining the remedy that he has

done or offered to do, or is then ready and willing to do, all that the essential and material acts required of him by the agreement at the time of commencing the suit, and also that he is ready and willing to do all such acts as shall be required of him in the specific execution of the contract according to its terms.    3 Pom. Eq. Jur. s. 1407.

*Roswell Farnham* and *A. M. Dickey*, for the orator.

Parol evidence was admissible.    26 Vt. 123; 1 Greenl. Ev. s. 305; 3 Stark. Ev. p. 1272; *Winn* v. *Chamberlin*, 32 Vt. 318; *Reynolds* v. *Hassam*, 56 Vt. 449; *Proctor* v. *Wiley*, 55 Vt. 344; 50 Vt. 1; 22 Vt. 507; *Sowles* v. *Soules*, 11 Vt. 146; *Stackpole* v. *Arnold*, 11 Mass. 31.

The bill alleges the insolvency of the defendant, and the master has found the fact that he is insolvent.    Courts of equity will always in such case compel offset regardless of the statute of set-off.    *Blake* v. *Langdon*, 19 Vt. 485.    *Downer* v. *Dana*, 17 Vt. 518.    Chamberlin was not a necessary party.    Story Eq. Pl. ss. 103, 113; *Van Cleef* v. *Sickles*, 5 Paige, 505.

The opinion of the court was delivered by

POWERS, J.    The bill seeks to compel an offset of the claims held by the defendant against the estate of Jesse Johnson, to the amount of the .dividends to become due thereon, to the orator's advances of money provisionally made to the defendant, and for the defendant's benefit, to satisfy the original holders of such claims; and for the payment to the orator of any balance that may be due him, above the amount of such dividends.

The defendant, amongst other things, incorporates in his answer a demurrer to the bill for want of equity.    But such a demurrer is waived unless it is brought on to hearing before the bill is answered and heard on the merits.    *Wade* v. *Pulsifer*, 54 Vt. 45.

But if seasonably interposed, the demurrer would be unavailing.    The subject-matter of set-off is one of the original and

well-established heads of equity jurisdiction. Our statutes allowing it have not taken away the jurisdiction of chancery, but have merely provided a remedy at law for the offset of mutual claims between parties which might always have been done in equity. At law, however, set-off cannot be effected unless the demands are, in legal significance, mutual.

Here the orator sues in his representative capacity as administrator upon a demand arising since the death of his intestate, and asks to have an offset made of claims allowed against the estate he represents in favor of third persons, but now held by the defendant as assignee, or equitable owner thereof.

At law the claims held by the defendant could be enforced only in the names of the original holders. They were not allowances made to the defendant. They were never at law debts owing by the intestate to the defendant.

Even if the debts had originally been payable to the defendant, they could not at law be offset to a demand accruing to the orator in his representative capacity after the death of his intestate, for this would alter the course of the distribution of the assets, and give one creditor an advantage over the others. *Aiken* v. *Bridgman*, 37 Vt. 249; *Rees* v. *Watts*, 11 Exch. 410; Chit. Cont. 956.

But in equity the form of the indebtedness is disregarded, and an offset may be decreed of liquidated demands held by an assignee or equitable owner,—especially if he is insolvent.

The defendant, in respect to the claims in question, stands in this relation; and his claims have been liquidated by the allowance of the commissioners, and the judgment of the Probate Court thereon. He is compellable, therefore, to make the offset, if the orator's case is in other respects made out. *Ferris* v. *Burton*, 1 Vt. 439; *Downer* v. *Dana*, 17 Vt. 518; *Blake* v. *Langdon*, 19 Vt. 485.

It is urged that the receipts of April 13th and April 17th, 1869, described in the master's report, are written contracts between the parties, and so within the rule. prohibiting the admission of parol proof to enlarge or vary the scope of the

terms made use of. But looking at these papers in the light of the circumstances surrounding their execution, and as applied to the subject-matter to which they relate, which is always allowable and generally necessary in the construction of written instruments, we think they are, what their terms fairly import, mere accountable receipts for money, and not contracts within the rule contended for. They purport to acknowledge the receipt of money to be accounted for in the settlement of certain claims allowed by commissioners; but upon what basis of accountability, or what is included in the unnamed and unspecified " certain claims," and when or with whom the accounting is to be had, is left wholly to conjecture so far as the terms of the instrument inform us. It is clear, then, that by giving to these instruments the character of contracts, they are so far ambiguous as to require explanation, even upon the defendant's theory of the manner in which he holds the money specified. They are like the receipt described in *Hitt* v. *Slocum*, 37 Vt. 524, which was " a receipt for the Osborn note to apply on account;" and that in *Earle* v. *Wallingford*, 44 Vt. 367, which in form showed a completed contract; and that in *Randall* v. *Kelsey*, 46 Vt. 158, which purported to be in full; and those in many other cases, wherein it has been held that a receipt purporting to be in full, thus indicating the consummation of a previous transaction, or one for money or property to be thereafterwards accounted for, is an instrument that is open to explanation, so that its true office, as between the parties, may be fulfilled.

The objection made to the evidence offered to show the true character of the other exhibits of the orator rests substantially upon the ground above referred to, and need not be further considered.

The defendant claims that the effect of his answer as evidence was ignored or disregarded by the master; but there is nothing in the report that warrants this criticism. The answer as evidence is to be weighed like other evidence. It gains no factitious weight because it happens also to be one of the plead-

ings. As evidence it is subject to the infirmities of evidence. *Veile* v. *Blodgett*, 49 Vt. 270.

The master having based his findings upon proper evidence, they established this state of facts : The orator advanced to the defendant at his request, from time to time, large sums of money belonging to the estate he represented, for the purpose of aiding the defendant in getting temporary relief from the pressure of certain creditors of said estate, whose claims were legally collectible of the defendant as surety for the intestate, and to enable him to buy up sundry claims of other creditors for his own personal advantage, under an agreement that as to said estate such claims should be held by the defendant precisely as they otherwise would have been held by the original holders ; that is, subject to such dividends as might ultimately be declared upon them ; and after deducting or offsetting such dividends, the defendant should account to the orator for any balance that might be due him, with interest from the date of such advances. These facts are applicable to all the exhibits of the orator, from No. 2 to No. 9 inclusive. They all represent a common understanding respecting the accountability of the defendant.

The Statute of Limitations is interposed as a bar to the relief the orator seeks ; but this defence is not available ; as by the terms of the agreement the time has not arrived for the application of the dividends to the advances made nor the payment of any balance that may appear by such application.

The suit is not premature ; for the defendant has repudiated the understanding upon which he received the money and his agreement to make the application of it upon the claims which he now holds. Under these circumstances a right accrued to to the orator to have the *status* of these claims fixed by a decree in chancery in advance of any order of the Probate Court for the payment of the claims allowed by commissioners and the distribution of assets ; as the Probate Court is powerless to make an offset of the dividends upon these claims to the orator's advances, and the orator could in that court get no protection

for these advances in the settlement of his administration account, and by the insolvency of the defendant would be wholly without remedy.

There is little reason, therefore, in asking the orator in advance to hazard the fruitless experiment and incur the needless expense of seeking at the hands of the Probate Court a decree to the effect that it can give him no relief in the premises.

The remedy at law is wholly inadequate to restore to the orator the assets of this estate, which he has in kindness but not in wisdom entrusted to the defendant.

The defendant controls all the claims in question as well those upon which Chamberlin was surety as the others.

The master says respecting the money advanced to pay the Holton and Andross notes which were signed by the defendant and Chamberlin: "It was agreed between the orator and defendant, that the orator would let the defendant have the money required to pay the Holton note and the Andross note, and the defendant was to hold said notes against the orator administrator the same as the original party would have done, and on the settlement of the estate the dividend on these notes was to offset against the money thus advanced by the orator administrator as aforesaid." As to these notes then, although Chamberlin was a joint surety with the defendant, still the advance of the money was made to the defendant alone, and accountability therefor was alone assumed by the defendant. Chamberlin, then, is no proper party to an accounting upon the score of those notes.

As to exhibit No. 4, covering the Rice note, the master says: "The defendant and M. R. Chamberlin requested the orator to pay said note, and the orator did so; and they were to account to the orator as though they held the note to account to the orator for any deficiency that might arise by reason of the estate being short of paying in full." This would indicate a joint accountability of the defendant and Chamberlin for the advance upon this note. But the master, later on, says that

during the time the orator was letting the defendant Johnson and Johnson and Chamberlin have the money named in the orator's exhibits, it was agreed by the parties *that defendant Johnson should account for the money so advanced* in the settlement of the claims that he might hold against the estate, and that any balance that might be either way the *orator and the defendant* were to adjust. And, again, near the close of the report, he says : "The claims purchased in by the defendant and M. R. Chamberlin, and those named above purchased in by the defendant, are now held by him (defendant) with the same rights to a dividend in the estate of Jesse Johnson as the original holder." Upon the whole finding it is manifest that the defendant by the arrangement was the sole party to the accounting provided for by the agreement of all parties in interest. The defendant alone holds all the claims in question, and he is bound to carry out the agreement established on the evidence.

The decree of the Court of Chancery is affirmed, and the cause remanded, with mandate.