FARMERS' TRUST COMPANY, of Maryville, a Corporation, by S. L. CANTLEY, Commissioner of Finance of the State of Missouri, and EARL C. McKISSICK, Special Deputy Commissioner in Charge Thereof, v. THE TOOTLE-LACY NATIONAL BANK OF ST. JOSEPH, a Corporation, Appellant.—56 S. W. (2d) 769.

Division One, January 28, 1933.

*Brown, Douglas & Brown* for appellant.

*Shinabargar, Blagg & Livengood* and *Culver, Phillip & Voorhees* for respondent.

FRANK, P. J.—On April 7, 1930, the Farmers' Trust Company, a banking institution of Maryville, Missouri, closed its doors and was placed in charge of the Commissioner of Finance. At that time it had on deposit in The Tootle-Lacy National Bank of St. Joseph, Missouri, subject to check, the sum of $19,444.91. Thereafter the Commissioner of Finance in charge of the Farmers' Trust Company withdrew from said deposit the sum of $8,201.47, thereby leaving on deposit to the credit of said trust company a balance of $11,243.44. On June 4, 1930, the Commissioner of Finance demanded payment of said balance which was refused, and this suit was brought to recover the amount of such balance with interest from June 4, 1930. The Tootle-Lacy National Bank, defendant below, admitted the facts above stated, but contended that the Farmers' Trust Company was indebted to it in the sum of $11,250, for which amount it was entitled to a set-off. A jury was waived and the cause was tried to the court on an agreed statement of facts. The trial resulted in a denial of defendant's rights to a set-off, and judgment was rendered in favor of plaintiff for $11,837.40 with six per cent interest from date of judgment. Defendant has appealed.

Appellant bases its alleged right to a set-off on the following facts:

On November 15, 1926, George B. Baker and Edward E. Williams were the owners of 280 acres of land in Missouri, subject to encumbrance, 180 acres in Illinois subject to a lease expiring March 1, 1930, and 320 acres in Colorado. It appears from the agreed statement of facts that Baker and Williams were liable to appellant as makers on certain notes and as endorsers on other notes aggregating $30,000. It further appears from the agreed statement that they were liable as sureties on bonds to the treasurer of Nodaway County, Missouri, in the sum of $19,805.84, to the treasurer of the city of Maryville, in the sum of $11,500, to the treasurer of School District No. 97 of Nodaway County, in the sum of $7,344.35, and to B. M. Rowley, trustee, in the sum of $5,862.81. A trust agreement was entered into between appellant, Baker and Williams, and one W. C. Pierce as trustee. Pursuant to the terms of the trust instrument the land above described belonging to Baker and Williams was conveyed to W. C. Pierce as trustee, who was authorized to take possession of, look after, care for, rent and dispose of said lands in the manner provided in said trust instrument, and when said lands were sold the trustee was directed to pay out of the net proceeds of the sale (1) the expenses incurred in discharging the trust, including expense of sale, (2) a reasonable compensation to the trustee for his services, and (3) the remainder *pro rata* on the debts of Baker and Williams above mentioned.

Immediately after the execution of said trust instrument, W. C. Pierce accepted the trust created thereby, took possession of the land, collected the income therefrom, and on April 3, 1929, sold the land located in the State of Illinois for $24,000 and deposited said sum together with the income he had received from the lands, in the Farmers' Trust Company under the name of "Baker and Williams Trust Fund," subject to the control and check of said Pierce as trustee. Thereafter the trustee withdrew the sum of $6,387.90 with which he paid taxes, interest on mortgages and other expenses of the trust. At the time the trust company closed its doors and passed into the hands of the Commissioner of Finance, there was on deposit in said trust company in the "Baker and Williams Trust Fund" a balance of $21,588.72. The Tootle-Lacy National Bank contends that as this trust fund was created for the purpose of paying debts due the creditors of Baker and Williams, of which it was one, it therefore had an interest in such trust fund, which said interest it was entitled to set-off against the debt which it admittedly owed the trust company.

By the terms of the trust instrument and the agreed statement of facts, the net balance of the trust fund after paying the expenses of executing the trust, including reasonable compensation to the trustee, was to be paid *pro rata* to the Tootle-Lacy National Bank and four other creditors of Baker and Williams. Conceding that a court of equity, in a proper case, would be authorized to apportion a debt

which the plaintiff owed defendant and others jointly, and set-off defendant's portion of such debt against the debt which the plaintiff claimed against the defendant, there are two reasons why such a procedure cannot be followed in this case. In the first place, four of the creditors of Baker and Williams, who by the terms of the trust agreement are entitled to participate in the distribution of the trust fund on the termination of the trust are not parties to this suit. It would be necessary to apportion this trust fund in order to determine what amount of such fund Tootle-Lacy National Bank would be entitled to set-off against the debt it owes the trust company. Such an apportionment could not be made in the absence of the four creditors who have an interest in the trust fund. They are entitled to be heard on that question. Such is the settled law. We call attention to one case, Fulkerson v. Davenport, 70 Mo. 541. In that case an application was made to the court to allow two judgments obtained by plaintiff against defendant to be set off against a judgment obtained by defendant and one Ramsey against plaintiff. Ramsey was not a party to the suit. In denying the right of set-off, we said:

"The insuperable obstacle to the relief asked in this case is, that Ramsey, the joint owner with defendant of the judgment against plaintiff, is not made a party to the case. Although he has no interest whatever in the controversy between plaintiff and defendant, it is impossible for the court, in his absence, to determine the extent of Davenport's interest. Ramsey has a right to be heard on that question; he is a necessary party to a full investigation of the facts upon which plaintiff's relief depends. The assertion in the bill that defendant is owner of the larger part of the judgment is mere assertion and amounts to nothing without proof, and Ramsey must have an opportunity of being heard on this question.

"If the defendant was owner of any part of the judgment, whether larger or smaller, we see no objections to a set-off as far as it goes. And this seems to be the doctrine of courts of equity in England and this country. [Vulliamy v. Noble, 3 Merivale, 593; Blake v. Langdon, 19 Verm. 485; Ex parte Stephens, 11 Ves. 24; James v. Kynnier, 5 Ves. 108.] Judge REDFIELD, who reviews the cases in Blake v. Langdon, observes that 'when the debts are in reality mutual, or to that extent, even when the debt must be apportioned and the party attempting to enforce his claim at law in the name of some other party, but nominally interested, is himself insolvent, a court of equity should and will interpose to prevent the injustice by decreeing the set-off.' It is conceded in the present case that in order to make the debts mutual which we are desired to set off against each other, the debt of Davenport and Ramsey must be apportioned, but this could not be done in a proceeding to which Ramsey was no party."

Had all of the creditors of Baker and Williams been made parties to the suit, there would still have been an insuperable obstacle

to appellant's alleged right to a set-off in this case. The trust created by the trust agreement was not terminated at the time the trust company closed its doors. By fair interpretation of the trust agreement the creditors of Baker and Williams were not entitled to a distribution of the trust fund until all of the land was sold and the expenses incident to the execution of the trust, including the trustee's fee, had been paid. That part of the trust agreement pertinent to this question reads:

"When said trustee shall have sold and disposed of said lands in the manner hereinbefore provided, he shall pay out of the net proceeds thereof, first, the necessary expenses incurred by him in the discharge of the duties of said trust, including expense of sale; second, a reasonable compensation for his services as trustee; third, the remainder *pro rata* on the then net amount of the liabilities listed in 'Exhibit C' together with the then unpaid amount, ascertained as hereinbefore provided, of said obligations of the parties of the first part to the party of the third part."

The liabilities listed in Exhibit C, and the obligations due the party of the third part, to which reference is made in above quotation, are the debts due the creditors of Baker and Williams to which we have heretofore alluded. The 280 acres of land in Missouri and the 320 acres in Colorado had not been sold but were still in the possession of the trustee at the time of the trial. The taxes on the Colorado land for the year 1930 were due and unpaid at that time. The compensation of the trustee had not been paid and the amount thereof had not been agreed upon nor otherwise determined. The beneficiaries of the trust fund were not entitled to a distribution of the fund until the trustee had sold all of the land and paid the cost and expenses of executing the trust. Besides, the trial court did not and could not know what this land would bring when sold, and for that reason was not in a position to apportion the trust fund for the purpose of determining what the Tootle-Lacy National Bank's share thereof would be, until after the land was converted into cash, because this unsold land was a part of the trust property.

Appellant makes the contention that as to the funds on deposit in the trust company at the time it closed, the trust had become an inactive or dry trust, and for that reason the trustee had no right to withhold payment thereof from appellant and the other beneficial owners.

We do not agree with this contention. The amount on deposit in the trust company at the time it closed represented the proceeds of the sale of only a part of the land. We again call attention to the fact that the trust agreement provides that when said trustee shall have sold and disposed of said lands in the manner hereinbefore provided he shall pay out of the net proceeds thereof (1) the cost and expenses of executing the trust, (2) a reasonable compensation to the

trustee, and (3) the balance *pro rata* to the creditors of Baker and Williams. This language is too plain to admit of but one construction, and that is, that the trustee should not pay any money to the creditors of Baker and Williams until all of the land had been sold and the cost and expenses of executing the trust had been paid. The fact that when the trust company closed, it had on deposit and in its possession the proceeds of the sale of a part of the land should not influence the construction of the plain language of the trust agreement. Appellant's contention seems to be based on the following provision of the trust agreement.

"If the party of the second part shall not in the exercise of the judgment, power and discretion herein conferred upon him, have sold and disposed of all of said lands prior to March first, 1930, it shall be his duty forthwith thereafter to offer any of said lands remaining unsold for sale at public vendue to the highest bidder for cash, and upon such sale to execute and deliver to the purchaser or purchasers thereof sufficient deeds for the same, holding the proceeds of any such sale for the purposes hereinafter stated."

The contention is that when March 1, 1930, arrived the money on deposit in the trust company which represented the proceeds of the sale of a part only of the land, belonged to the beneficiaries of the trust, and as to such money, the trustee had no duty to perform except to pay it over to the beneficiaries. For reasons heretofore stated, such a procedure would be contrary to the express provisions of the trust agreement. True, the beneficiaries of the trust are entitled to have the trust executed in accordance with the provisions of the trust agreement. The failure of the trustee to sell at public auction the land remaining on hand on March 1, 1930, would, no doubt, entitle the beneficiaries to take the necessary legal steps to have the land sold and the trust terminated in accordance with the provisions of the trust agreement, but such failure on the part of the trustee would not entitle one of the beneficiaries to recover an aliquot part of the proceeds of the sale of only a part of the trust property, as is attempted in this case, in face of the positive mandate of the trust agreement that the beneficiaries of the trust shall receive their share of the proceeds of the sale of the trust property when all the property has been sold and the cost and expenses of executing the trust have been paid.

For convenient identification we have referred to the fund deposited in the trust company as "the trust fund." This fund was a trust fund so long as it remained in the hands of the trustee, but when the trustee made a general deposit of it in the trust company, the title to the fund passed to the trust company, and the relation of debtor and creditor, and not that of trustee and *cestui que trust* was created between the depositor and the trust company.

Appellant contends that "the right of off-set as an equitable defense

may be asserted by the real party in interest, or upon a foundation of equitable title as well as upon legal title.'' In support of this contention, the following authorities are cited: 24 R. C. L. 859, 860; 34 Cyc. 717, 718; Nickerson v. Gilliam, 29 Mo. 456; Strong v. Gordon, 203 Mo. App. 470, 221 S. W. 770; Hall v. Wilder Mfg. Co., 316 Mo. 831, 293 S. W. 760; Fricke v. Battery & Supplies Co., 220 Mo. App. 623, 288 S. W. 1000; Rankin v. Blain County Bank, 20 Okla. 68, 93 Pac. 536. We have no fault to find with the principle of law contended for, or the cases cited in support thereof. The facts in the cited cases are essentially different from the facts in the case at bar, and for that reason they are not in point. In neither of the cited cases was there an attempt made, as in the case at bar, to apportion or determine the interest of the defendant and others in a fund which they jointly owned, without bringing such other interested parties into court and giving them an opportunity to be heard on the question of apportionment. Neither do either of the cited cases deal with an agreement, such as we have in this case, which fixes the time when the joint owners of a fund are entitled to have their interest determined and the fund distributed.

Further contention is made that an unliquidated demand not sounding in tort may be made the subject of set-off in equity.

We have no fault to find with this contention. A sufficient answer thereto is that we are not denying appellant's alleged right to a set-off on the ground that its claim is unliquidated or that it sounds in tort.

For the reasons stated, the decree below should be affirmed. It is so ordered. All concur.